490 So.2d 639 (1986)
Bobby BROWN, Appellant,
v.
GEORGIA CASUALTY AND SURETY COMPANY, Appellee.
No. 17854-CA.
Court of Appeal of Louisiana, Second Circuit.
June 11, 1986.
Eugene P. Cicardo, Jr., Alexandria, for appellant.
Dawkins, Coyle & Carter by Michael S. Coyle, Ruston, for appellee.
Before HALL, SEXTON and NORRIS, JJ.
NORRIS, Judge.
This is a workers compensation case in which the plaintiff, Bobby Brown, fell off a truck at work and sustained a lower-back injury. He received workers comp benefits for about nine weeks until the compensation board, acting on a physician's release, determined that he was able to work again. Despite the work release, Brown continued to suffer from pain and continued treatment with various physicians and a chiropractor. *640 He eventually brought suit claiming benefits for permanent, total disability, medicals, penalties and attorney fees. The trial court awarded medicals up until the trial but refused any additional comp and rejected the penalties and fees. From this judgment Brown now appeals. His chief contention is that the trial court should have found him disabled at least as long as he was still incurring doctor bills for which the insurer was held liable. He also contests the denial of penalties and fees. For the reasons expressed, we reverse in part, amend and affirm in part.
Brown was working for Jackie Bedsole as a logging-truck driver and loader. On July 5, 1983, he climbed onto his truck, which was wet from a recent rainfall, slipped off and fell backwards to the ground. He injured his back and left leg; he also suffered a blow to his head, leaving him unconscious for a short while. When he came to, Mr. Bedsole took him to Dr. Dillard in Mansfield; Dr. Dillard referred him to Dr. Goodman, an orthopedic surgeon. Dr. Goodman's associate, Dr. Mead, examined Brown. He could find no real tenderness in the lower back, no swelling and no limitation of motion. He felt that Brown suffered from multiple contusions that would heal themselves without treatment and without permanent disability.
In addition to the company doctors, Brown visited his general practitioner, Dr. Huckabay, in Coushatta. Dr. Huckabay noted that Dr. Goodman's X-rays were negative; he diagnosed a lumbar sprain that he expected to improve in a short while. By the end of July, however, Brown was still complaining, so Dr. Huckabay conducted additional X-rays. These were also negative. Brown nevertheless continued to see Dr. Huckabay and complain of pain. Dr. Huckabay thought the complaints of pain were substantiated by a test in which he depressed the skin above the coccyx and a pain reflex resulted. While still seeing Dr. Huckabay regularly, Brown also returned to Dr. Goodman, who thought the sprain was resolving, that the pain was not objectively proven, and that Brown could return to work on light duty. Dr. Goodman wrote the work release on August 25.
Meanwhile, Brown continued to see Dr. Huckabay and complain of lower back pain. Dr. Huckabay felt the complaints were sincere so he sent Brown to another orthopedist, Dr. Fox, in September. Dr. Fox conducted a physical examination. He found tenderness without spasm at S-1, and a slight decrease in bending and rotating. He diagnosed mild fascitis. He prescribed a corset and a mild analgesic. Over the next few months, however, he noted little overall improvement. He therefore placed Brown in the hospital in January for a myelogram and CT scan. These tests were completely negative and led Dr. Fox to doubt whether Brown's complaints of pain were still sincere. After the tests, he noted slight improvement and by March 26, despite continued complaints, he could find nothing wrong with Brown. He discharged him then with no finding of disability.
Brown paid a final visit to Dr. Huckabay in April. He thought that Brown's complaints were still legitimate.
During the time of his treatment, Brown had made some isolated attempts to do some work. On the strength of Dr. Goodman's release, he went back to Jackie Bedsole, but was laid off after four days. The evidence is not clear whether the layoff was due to lack of work or perhaps Brown's tardiness, but Brown testified that for those four days, he was working in pain. As a logging-truck driver, he did not merely drive; he was expected to trim the logs and to fasten them down, and these additional details were particularly hard on his back. Dr. Goodman also stated that if he had known about the extra work details, he would not have released Brown. Brown also did a few days of substitute bus driving for the Caddo Parish School Board, but he claimed this was also hard on his back. He applied for work, without success, at a desk job for the sheriff's office and police department; he also applied for unemployment.
*641 After he was released by Dr. Fox and quit seeing Dr. Huckabay, he began seeing Dr. Kelly, a chiropractor. Dr. Kelly saw and treated Brown constantly between June 1984 and the trial in January 1985. He performed a number of physical tests that were mostly negative but showed a deficiency in leg-raising. He noted muscle atrophy in the left leg and muscle spasms in the back. Because Brown began complaining of pain radiating to his left knee, Dr. Kelly diagnosed a Grade 2 or intermediate disk problem, probably a herniated disk. He recognized, however, that the myelogram and CT scan had showed no such problem. He conducted therapy and manipulations on a better than weekly basis. At trial, he said Brown owed him $2,086.
Without written reasons, the trial court awarded all medical expenses, including the chiropractor bills, through January 21, 1985. He denied the claim for comp after September 12, 1983. Brown's first assignment of error is grounded in the alleged inconsistency of the ruling. He claims that if the medical bills are compensable through January, then his physical condition is likewise compensable for the same time.
The insurer has not contested the medicals. Rather, it points to the statute, LSA-R.S. 23:1221(2)(c), which requires an employee to prove permanent, total disability by clear and convincing evidence, to the exclusion of odd-lot employment, sheltered employment and working in pain. The statute covering medicals, LSA-R.S. 23:1203, only requires the employee to show that the medical treatment was necessary. Thus an employee may fail to prove permanent, total disability while still proving necessary medical services. Dyson v. Travelers Ins. Co., 256 So.2d 468 (La.App. 4th Cir.1972); see also Martin v. H.B. Zachry Co., 424 So.2d 1002 (La.1983). Thus we conclude that the period for which medical expenses are compensable is not necessarily coextensive with the period of disability.
Even without relying on the time span of medical payments, Brown contends he is permanently and totally disabled. This claim is completely untenable. Dr. Goodman specifically found no disability. Goodman's Dep., 11. Dr. Huckabay thought that Brown could do some limited work. Huckabay's Dep., 13. Dr. Kelly thought Brown could not return to his old job, but admitted that the inability to work might not be permanent and that Brown might try some driving. Kelly's Dep., 47; R. p. 139. Dr. Fox obviously thought Brown could work when he discharged him in March, 1984. Fox's Dep., 14. The only contrary evidence is the testimony of Brown himself and of his girlfriend, Nancy Sanders. This evidence is not adequate to meet the clear and convincing standard announced by the statute. The evidence seems also not to exclude the chance of Brown getting a desk job with a law enforcement agency, or working as a watchman or as a school bus driver. There is no showing of permanent, total disability.
The evidence does support, however, a finding of temporary, total disability. The insurer has devoted a long section of its brief to outlining the legislative repeal of the odd-lot doctrine and the working in pain doctrine. We readily accept that the purpose of the 1983 amendments was to eliminate these outlets for permanent, total claimants. See Malone & Johnson, Workers' Compensation 2d, § 276.5 (1985 p.p.). From this, the insurer argues that the same restrictions must apply to a temporary, total claimant. This is not true. LSA-R.S. 23:1221(1) provides:

(1) Temporary total. For injury producing temporary total disability of an employee to engage in any self-employment or gainful occupation for wages whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured and whether or not an occupation for which the employee at the time of the injury was particularly fitted by reason of education, training, or experience, sixty-six and two-thirds percent of wages during the period of such disability.
*642 The proof does not need to be made by clear and convincing evidence; the old standard still applies to temporary, total claims. See Brewster v. Manville Forest Products Corp., 469 So.2d 340, 345 (La.App. 2d Cir. 1985). The only issue is when was Brown sufficiently healed from the accident to be able to engage in any self-employment or gainful occupation for wages.
We think the trial court erred by setting the cutoff for benefits according to Dr. Goodman's work release. Dr. Goodman's deposition was the only testimony in the record to support such an early termination of benefits. But he admitted that if he had known the true nature of Brown's work, he would not have recommended returning to it. Goodman's Dep., 13. There is no other evidence to support such an early release. To rely on this release under these circumstances was clearly wrong. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
We have reviewed all the remaining evidence. Dr. Huckabay thought that Brown was still experiencing pain as late as April 1984, even though the injury should have healed in a shorter time. Dr. Goodman also thought the injury should have healed in a matter of "several weeks." Dr. Kelly found Brown's pain to be mild or moderate by mid-summer 1984. We consider the small amount of pain reported to Dr. Kelly to be endurable enough to justify a return to work and a termination of benefits.
The trial court was entitled to rely on the testimony of Drs. Goodman and Fox, the orthopedic surgeons. Both said that Brown would be temporarily disabled. But given the conditional nature of Dr. Goodman's release, we hold with Dr. Fox's unconditional release. He testified that Brown was probably able to work by February 1984, and certainly able to return to work without disability by March 26, 1984. We agree. We therefore hold that Brown's disability terminated on that date, and he should be compensated accordingly.
In his second assignment of error, Brown contends the trial court erred in not awarding penalties and attorney fees for arbitrary and capricious termination of benefits, medical payments and travel expenses. We have repeatedly held that when an insurer relies on a bona fide work release to discontinue benefits and payments, there is no ground for penalties and fees. Lewis v. Alloy Casting of La., 465 So.2d 847 (La.App. 2d Cir.1985), Harrison v. Chicago Mill & Lbr. Co., 446 So.2d 843 (La.App. 2d Cir.1984); Johnson v. Ins. Co. of N. Amer., 454 So.2d 1113 (La.1984); LSA-R.S. 22:658.
Accordingly, that portion of the judgment denying compensation benefits after September 12, 1983, is reversed. The judgment is amended to read as follows:
IT IS HEREBY ORDERED, adjudged and decreed that there be judgment in favor of plaintiff, BOBBY BROWN, and against defendants, GEORGIA CASUALTY & SURETY COMPANY and B. JACKIE BEDSOLE TIMBER COMPANY, in the amount of One Hundred, Seventy-Eight and .59/1.00 ($178.59) per week from September 12, 1983 until March 26, 1984.
In all other respects, the judgment is affirmed. Costs are assessed one-half to appellant and one-half to appellees.
REVERSED IN PART, AMENDED AND AFFIRMED IN PART.