552 So.2d 536 (1989)
Georgia FRAZIER, Appellant,
v.
CONAGRA, INC., et al, Appellees.
No. 20886-CA.
Court of Appeal of Louisiana, Second Circuit.
November 1, 1989.
Rehearing Denied December 1, 1989.
Writ Denied February 16, 1990.
*538 William H. Baker, Jonesboro, for plaintiff-appellant.
Cook, Yancey, King & Galloway by Sidney E. Cook, Jr., Shreveport, for defendants-appellees.
Before HALL, FRED W. JONES, Jr., and HIGHTOWER, JJ.
FRED W. JONES, Jr., Judge.
In this action for worker's compensation benefits, plaintiff appealed the judgment of the trial court denying her worker's compensation benefits for total and permanent disability or temporary total disability and failing to order rehabilitation as the result of her work-related injury. For the reasons stated herein, we find that the trial court erred in failing to find that the plaintiff was temporarily totally disabled and in failing to consider rehabilitation services.
Issues Presented
On appeal, the plaintiff asserts the following assignments of error:
1) The trial court erred in failing to find that the plaintiff had sustained a total and permanent disability and/or a temporary total disability;
2) The trial court erred in failing to order rehabilitation for the plaintiff;
3) The trial court erred in finding that the plaintiff could return to a light work office job that was offered at wages equal to her former employment and in terminating benefits because of that job offer;
4) The trial court erred in failing to award plaintiff compensation having found that the plaintiff was not the type of person who would be an office worker and could only return to light work;
5) The trial court erred in failing to award future medical and expenses to the plaintiff;
6) The trial court erred in failing to award attorney's fees in an amount in excess of $4000, and
*539 7) The trial court erred in refusing to grant penalties on the entire award.
Factual Context
The record shows that on October 22, 1986, plaintiff was employed by Conagra, Inc., at the Country Skillet Poultry Company in Arcadia. She had been employed by Conagra for approximately five years and was working 40 hours per week at the rate of pay of $5.20 per hour. Part of the plaintiff's duties included taking chickens off the breast processor machine in an assembly line. On that date, plaintiff was operating the breast processor machine when a piece of steel hung into her left arm and hand causing a severe laceration.
Plaintiff was transported to Doctors' Hospital in Shreveport for treatment of the injury. She sustained extensive muscle damage and an injury to a branch of the radial nerve in her left arm. It appears that the laceration on her left arm began just below the elbow and extended approximately half-way down the forearm. Plaintiff had the use of her arm and hand but had loss of extension of her thumb and all of her fingers. The wound was cleaned and several nerves in the plaintiff's arm were repaired. On December 4, 1986, she underwent a surgical procedure for tendon transfers to restore finger extension, thumb abduction and thumb extension.
Plaintiff's treating physician was Dr. Craig Springmeyer, an orthopedic surgeon. On October 31, 1986, Dr. Springmeyer was of the opinion that although surgery was anticipated, plaintiff could return to "light duty" with no use of the left forearm in November. On this basis, plaintiff's compensation benefits, which had commenced on October 23, 1986, were terminated for a two week period beginning on November 23, 1986, and plaintiff was offered "light duty" by Conagra. The benefits were reinstated when plaintiff underwent the tendon transfer on December 4, 1986, and later terminated on March 30, 1987. The termination of benefits at that time was based upon a report from Dr. Springmeyer dated March 30, 1987, wherein he stated that over the next few months plaintiff should be able to return to her regular activities if she were having no problems. Dr. Springmeyer indicated that plaintiff could return to any activity that did not require any real use of her left upper extremity, except lifting a pound or two, or repetitive motions of her hands.
On April 3, 1987, plaintiff was contacted by Mattie Huckaby, safety coordinator for Conagra, and informed of a "light duty" position in the personnel office that met the restrictions imposed upon plaintiff by Dr. Springmeyer. The job primarily involved marking export bags with a marking pen, answering the phone and a few simple clerical duties. Conagra asserted that the position of marking bags was not specifically created for the plaintiff but was a job that had to be done under an export contract. This position offered wages equal to the wages the plaintiff was earning at the time of the accident. Alleging that she was physically unable to work, plaintiff refused the "light duty" job.
Plaintiff then filed this action for worker's compensation benefits, naming as defendants, her employer, Conagra, Inc., and its insurer, Hartford. In her petition, plaintiff alleged that as a result of the work-related accident and the injury sustained by her, she had become totally and permanently disabled. Plaintiff alleged that she was entitled to the maximum benefits available and that while some worker's compensation payments had been made, plaintiff's benefits had been discontinued as of March 30, 1987. Plaintiff also alleged that despite notice of her injury and disability, demands for payment and recommendations of the Office of Worker's Compensation, defendants had refused to pay worker's compensation benefits as well as the medical bills and expenses incurred as a result of the injury. Plaintiff alleged that the defendants' failure to pay benefits and medical expenses had been arbitrary, capricious and without probable cause, therefore entitling plaintiff to an award of statutory penalties together with reasonable attorney's fees. Plaintiff prayed for a judgment awarding her benefits at the maximum rate for each weekly period from October 22, 1986, during the period of her *540 disability and medical expenses incurred or to be incurred for the treatment of her injuries as well as travel expenses.
The evidence at the trial on the merits established that the breast processor machine splits the chicken breasts with a cutter and sends them down to another bin. It is necessary for the person operating the machine to use both arms and hands to continuously place the chicken upon the cutter. The work is highly repetitive. The machine will handle up to 37 chickens a minute and the machine operates at this rate approximately 75 to 80% of the time. The operators of the machine receive two 10 minute breaks and a 30 minute lunch break during their eight hour shift.
Plaintiff testified she had a tenth grade education, can read and write a little and has only worked at Conagra on the assembly line. Plaintiff testified that in November, 1986, when she was requested to return to work for "light duty", she was physically unable. Plaintiff stated that she could hardly stand up and was incapable of performing any "light duty". Plaintiff stated that she was unable to work at the present time and did not know of any job that she could do with the difficulty that she had with her arm even though she is right-handed. Plaintiff stated that she received a certified letter in April, 1986 from Conagra stating that a "light duty" position had been set up in the personnel office filing papers, etc. Plaintiff testified that the pain that she was experiencing along with the swelling precluded her from performing any "light duties" and she was incapable of clerical duties. Plaintiff stated she was still experiencing pain in her left arm and she could not pick up anything heavy. Plaintiff stated that the condition of her arm had become worse since March, 1987. The arm had less strength and she did not do any activity with it. Plaintiff testified she cannot use her arm as she used to and could not grip or grasp.
Plaintiff's treating physician, Dr. Craig Springmeyer, testified by deposition. Plaintiff was first seen by Dr. Springmeyer on the date of the accident. Dr. Springmeyer repaired the radial nerve and cleaned the wound. He stated most of the nerve had been destroyed. On March 30, 1987, Dr. Springmeyer felt plaintiff could return to any activity that did not require any real use of her left upper extremity, except lifting a pound or two, or repetitive motions of her hands. Dr. Springmeyer said over the next few months plaintiff could return to her regular activities if she were having no problems. On May 1, 1987, Dr. Springmeyer stated it would be beneficial if plaintiff did some type of "light work" at that time to increase her dexterity. If this worked out, Dr. Springmeyer thought she could gradually get back into her previous type work.
On June 29, 1987, Dr. Springmeyer believed plaintiff had reached maximum medical benefit and released her from medical treatment. He assigned plaintiff a 10% impairment affecting the upper extremity. Plaintiff had an extensor lag in her two middle fingers and the diameter of her upper arm was not normal due to muscle loss. Plaintiff lost a third of her extensor mass in the upper area and lost complete use of this muscle which affects finger and thumb extension due to her nerve injury. After the tendon transfer, plaintiff's elbow motion was normal, her wrist motion was normal and her grip strength was sufficient. She could flex or bend her fingers and thumb normally and her thumb extension appeared to return to normal. Dr. Springmeyer stated plaintiff could use her hand, not for eight hours a day initially, but he thought in time she could. Dr. Springmeyer was of the opinion that plaintiff could gradually re-educate her muscles. Dr. Springmeyer concluded that she should perform a fine type of work to improve her dexterity.
Dr. Springmeyer did feel that plaintiff had lost some of her use in the labor market. Dr. Springmeyer stated the "light duty" proposed by Conagra would be acceptable considering plaintiff's limitations. The doctor believed that over the next few months, plaintiff might eventually be able to return to her regular activities at Conagra. Dr. Springmeyer did not believe that finger extension would be changed a lot by rehabilitation but that plaintiff's coordination *541 and dexterity could be improved with time. In returning to her former position, Dr. Springmeyer stated that plaintiff would fatigue quickly doing the repetitive motion and would need to take frequent breaks. He stated plaintiff would probably have to start slowly and testified that he was not sure as to the exact requirements of plaintiff's former position, such as how much holding and pulling was required.
Dr. Raymond Dennie, a general practitioner, testified by deposition that he had examined plaintiff on one occasion. Dr. Dennie found that plaintiff was able to use her hand and had normal sensation. Plaintiff was able to grasp, pinch, hook and touch. Dr. Dennie said that plaintiff would be unable to lift more than five pounds and stated that her hand was considerably weak. Dr. Dennie estimated that plaintiff had lost approximately 25 to 30% use of her hand as a whole, basing that finding on the generalized weakness of her hand as opposed to function. Dr. Dennie concluded that plaintiff would be unable to perform her former job as she couldn't handle repetitive motions. Dr. Dennie thought that plaintiff would be able to perform the "light duty" offered by Conagra.
Evidence at trial as to the consideration by Conagra of rehabilitation services for the plaintiff was objected to by the defendants. The defendants asserted that rehabilitation was a totally separate matter that required the separate filing of a claim with the Office of Worker's Compensation, which the plaintiff failed to do.
Following trial on the merits, the trial court awarded plaintiff limited worker's compensation benefits. In its reasons for judgment, it appears the trial court found plaintiff to have been temporarily totally disabled by her injury. The court found that a job was offered to the plaintiff in the personnel office where she could mark bags with a marking pen and answer the phone. Noting that the plaintiff was an assembly line worker with a tenth grade education, the court stated that she was simply not the type of person that would be suitable as an office worker. The court found that Dr. Springmeyer's report dated March 30, 1987 did not indicate that plaintiff was released to return to work despite the prior letter of March 2, 1987 indicating that Dr. Springmeyer would check her in four weeks and that she might be able to return to some kind of work at that time. Nevertheless, the report on May 1, 1987, indicated that plaintiff could return to some type of "light work" and in fact such work would be beneficial. The court held that plaintiff was able to do the "light job" offered to her at that point and this position was still available. As the wages would be the same as her former employment, worker's compensation benefits should terminate as of May 1, 1987, and include the two week period beginning in November, 1986. The court further found that the termination of benefits was arbitrary, capricious and without probable cause and assessed attorney's fees for the plaintiff in the amount of $4000.
Disability of Plaintiff
La.R.S. 23:1221 provides, in pertinent part, that compensation shall be paid in accordance with the following schedule of payments:
(1) Temporary total. For injury producing temporary total disability of an employee to engage in any self-employment or gainful occupation for wages whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured and whether or not an occupation for which the employee at the time of injury was particularly fitted by reason of education, training, or experience, sixty-six and two-thirds percent of wages during the period of such disability.
(2) Permanent total.
(a) For any injury producing permanent total disability of an employee to engage in any self-employment or occupation for wages, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured, and whether or not an occupation for which the employee at the time of injury was particularly fitted by reason of education, training, and experience, sixty-six and two-thirds percent *542 of wages during the period of such disability.
(b) For purposes of Subparagraph (2)(a) of this Paragraph, compensation for permanent total disability shall not be awarded if the employee is engaged in any employment or self-employment regardless of the nature or character of the employment or self-employment including but not limited to any and all odd-lot employment, sheltered employment, or employment while working in any pain.
(c) For purposes of Subparagraph (2)(a) of this Paragraph, whenever the employee is not engaged in any employment or self-employment as described in Subparagraph (2)(b) of this Paragraph, compensation for permanent total disability shall be awarded only if the employee proves by clear and convincing evidence, unaided by any presumption of disability, that the employee is physically unable to engage in any employment or self-employment, regardless of the nature or character of the employment or self-employment, including, but not limited to, any and all odd-lot employment, sheltered employment, or employment while working in any pain, notwithstanding the location or availability of such employment or self-employment.
The 1983 amendments to La.R.S. 23:1221 left intact the traditional standard of preponderance of the evidence for temporary total disability. The 1983 amendments also failed to exclude from temporary total disability the application of the odd-lot doctrine, sheltered employment and working in pain. The jurisprudence has specifically held that the odd-lot doctrine, sheltered employment and working in pain are viable in cases involving temporary total disability.[1] See Breaux v. Travelers Insurance Company, 526 So.2d 284 (La.App. 3rd Cir.1988); Marcotte v. Gulf Builders, Inc., 525 So.2d 208 (La.App. 1st Cir.1988), writ denied, 530 So.2d 88 (La.1988); Green v. Jackson Rapid Delivery Service, Inc., 506 So.2d 1345 (La.App. 2nd Cir.1987); Johnson v. Monroe Pulpwood Company, Inc., 505 So.2d 862 (La.App. 2nd Cir.1987); Thomas v. Elder Pallet and Lumber Sales, Inc., 493 So.2d 1267 (La.App. 3rd Cir.1986), writ denied, 497 So.2d 312 (La.1986), and Brown v. Georgia Casualty and Surety Company, 490 So.2d 639 (La.App. 2nd Cir.1986).
A claimant is considered temporarily totally disabled under the "odd-lot" doctrine when he can perform no services other than those which are so limited in quality, dependability or quantity that a reasonably stable market for them does not exist. This determination can only be made after evaluating the claimant's physical and mental capacity, education and training. The odd-lot claimant does not have to be absolutely helpless in order to qualify for total disability. If the claimant can prove that his physical condition, mental capacity, education, training, age and other factors combined to place him at a substantial disadvantage in the competitive labor market, he has made out a prima facie case for classification in the odd-lot category. This satisfies the claimant's burden of proving that he should be awarded benefits for total disability. The employer or insurer must then show that some form of gainful occupation is regularly and continuously available to the employee within reasonable proximity to the employee's residence. DeGruy v. Pala, Inc., 525 So.2d 1124 (La.App. 1st Cir.1988), writ denied, 530 So.2d 568 (La.1988).
Plaintiff argues that the trial court erred in not finding that plaintiff was permanently and totally disabled and/or temporarily totally disabled as a result of her injury.
As noted above, to establish total and permanent disability, the employee must affirmatively demonstrate by clear and convincing evidence that the employee is physically unable to engage in any employment or self-employment including any and all odd-lot employment, sheltered employment or employment while working in pain.
*543 In this case, it is clear that the trial court did not err in finding that the plaintiff was not permanently and totally disabled. The medical testimony established that plaintiff was capable of restrictive "light duty" work at the time of trial and that there was a possibility of more recovery as plaintiff re-educated her arm muscles and improved her dexterity. Considering plaintiff's residual ability to work and the possibility of future improvement, it is clear that the plaintiff did not meet the statutory definition of total and permanent disability at the time of trial.
However, we find that the trial court erred in failing to find that plaintiff was temporarily totally disabled at the time of trial. Defendants' primary defense to plaintiff's claim of temporary and total disability was its own offer of sheltered employment consisting of marking export bags and simple clerical duties in the personnel office. There was no clear indication by defendants that this position was permanent in nature. The evidence indicated that this job had been performed by various persons in the past so it did not appear to be a permanent position for anyone who had previously held it. Further, based upon the description of the job, it is clear that it was an unusual combination of duties, clerical and menial tasks, which would not be available in the general job marketplace. The trial court apparently believed that the mere offer of such a job by defendants would preclude a finding of temporary total disability as it appeared from the medical evidence that the plaintiff was capable of performing this "light duty".
However, we find that the employer's self-serving creation of a job by combining various duties is not determinative of this issue. The court must also consider the general availability of a reasonably stable market for the services that an employee can perform. As noted above, if the employee can prove that his physical condition, mental capacity, education, training and age or other factors combined to place him at a substantial disadvantage in the competitive labor market, he has made out a prima facie case for classification in the odd-lot category. The employer or insurer must then show that some form of gainful occupation is regularly and continuously available to the employee within a reasonable proximity to the employee's residence.
Plaintiff was 33 years old at the time of the accident and had never held another job other than an as assembly line worker at Conagra. She had a tenth grade education and testified that she could read and write a little. Plaintiff testified that she was incapable of office work and would prefer to be back on the assembly line. Plaintiff's physical condition at the time of trial would preclude any assembly line work due to the constant repetitive motions which would be required and the restrictions as to the amount that she could lift. The trial court had the opportunity to hear plaintiff's live testimony and concluded that she was simply not the type of person that would be suitable for office work. Further, Dr. Springmeyer indicated that plaintiff's injury had placed her at a disadvantage in the job marketplace. Dr. Springmeyer believed that with time, plaintiff could re-educate her muscles, improve her dexterity and perhaps gradually return to her former duties.
The medical evidence established that while plaintiff was recovering from her injury at the time of trial and could regain some use of her arm so as to possibly be able to return to her former position, plaintiff's injury would preclude her from any employment except the most restricted "light duty". Certainly, plaintiff would be at an extreme disadvantage in the competitive labor market.
We find that plaintiff satisfied her burden of proving that she should be awarded benefits for temporary total disability during the period of her disability. The defendants did not show that some form of gainful occupation was regularly and continuously available to the plaintiff within reasonable proximity to her residence. The only evidence at trial as to possible employment of plaintiff following the injury was the "light duty" position offered by defendants. We find that the defendants' self-serving *544 creation of a specialized job by the consolidation of unrelated and dissimilar tasks is not sufficient to defeat plaintiff's claim for temporary total disability under the odd-lot doctrine, given the clear unavailability of such a job position in the general marketplace.
Rehabilitation
La.R.S. 23:1226 provides in pertinent part:
A. When an employee has suffered an injury ... which precludes the employee from earning wages equal to wages earned prior to the injury, the employee shall be entitled to prompt rehabilitation services. The employer or insurer shall provide such injured employee with appropriate training and education for suitable gainful employment...
The purpose of the statute is to educate and increase the job marketability of employees who cannot return to their former positions. Works v. Trinity Universal Insurance Company, 501 So.2d 1045 (La. App. 2nd Cir.1987), writ denied, 503 So.2d 480 (La.1987).
Plaintiff argues that the trial court erred in failing to consider rehabilitation services for the plaintiff. We agree.
Given the plaintiff's limited training and education together with her significant limitations of physical function and strength, it is clear that the employment opportunities for her at the same or similar wages are not reasonably attainable and on the face of the record it appears that the plaintiff would be a good candidate for and benefit from rehabilitation services. The defendants' defense was once again the offer of a "light work" position and that the plaintiff had failed to first file a claim for rehabilitation with the Office of Worker's Compensation.
Defendants urge this court to adopt a very narrow and strict interpretation of the right to rehabilitation as set forth in this statute. Defendants argue that as the statute states rehabilitation is available only when the employee is incapable of earning wages equal to wages earned prior to the injury, the offer of limited employment by the employer absolutely defeats the employee's claim for rehabilitation. We disagree. Although the first sentence of 23:1226(A) does require a finding that the injuries preclude the employee from earning wages equal to wages earned prior to injury so as to entitle the employee to rehabilitation, we note that the remainder of that section provides that employees who are entitled to rehabilitation are to be provided with training and education for "suitable gainful employment". Suitable gainful employment is defined in La.R.S. 23:1226(B) as:
... employment or self-employment, after rehabilitation, which is reasonably attainable and which offers an opportunity to restore the individual as soon as practical and nearly as possible to his average earnings at the time of injury. (Emphasis added)
We find that it would be illogical to construe this statute to reach a conclusion that a disabled person that apparently only has one sheltered job available at the discretion of the employer is ineligible for rehabilitation while a person with identical disabilities and limitations would be entitled to rehabilitation if such sheltered employment was not created by the employer. Such an interpretation would defeat the very purpose of the statute and would base the availability of rehabilitation upon the whim of the employer rather than upon the need of the employee. A more logical interpretation of this statute as a whole leads to the conclusion that an employee is entitled to rehabilitation if his injury reasonably precludes the employee from earning wages equal to wages earned prior to the injury.
In other words, if the employee has suffered an injury which reasonably precludes the employee from earning wages equal to wages earned prior to the injury, then the employee is entitled to training and education for reasonably attainable employment which offers an opportunity to restore the employee as soon as practical to his average earnings at the time of injury. If the injury is such that employment at similar wages is not reasonably attainable, *545 then the employee has met his burden and is entitled to rehabilitation services.
Under the standards set forth above, the defendants' offer of sheltered employment does not establish employment at similar wages is reasonably attainable and does not defeat the plaintiff's claim for rehabilitation services. Such employment offers by employers should be viewed cautiously because of the extraordinary danger of abuse. The employer could simply place an employee in sheltered employment for the duration of the prescriptive period and then eliminate the job, terminate the employee or make the job so burdensome and intolerable that the employee ultimately quits. Under these circumstances, the employee would be disabled, unrehabilitated and with no reasonably attainable employment opportunities, all of which would defeat the purpose and spirit of the rehabilitation statute. Simply stated, an employee who is placed in such sheltered employment essentially would become enslaved to the whim of the employer because of the lack of alternative employment and even if the employer did not terminate the sheltered job, the employee would be trapped in that particular position.
In examining the requirements of rehabilitation services, this court in Works v. Trinity Universal Insurance Company, supra, specifically noted that the objective of rehabilitation is to educate and increase the job marketability of employees who cannot return to their former positions and concluded that specialized job placement is of an inherently temporary nature and does not satisfy the statute. Rather, rehabilitation services must include vocational education and appropriate training to make the worker competitive in the labor market. This case involves the entitlement to rehabilitation rather than the extent of rehabilitation services and we simply conclude that the trial court should examine the same factors in considering the entitlement to rehabilitation as it does in considering the nature of rehabilitation services. See also Thomas v. Elder Pallet and Lumber Sales, Inc., supra.
Defendants contend that plaintiff is not entitled to rehabilitation services at this time because she has not followed the statutory scheme by first filing a claim for rehabilitation with the Office of Worker's Compensation.
As noted in Smith v. Georgia Casualty and Surety Company, 503 So.2d 720 (La. App. 3rd Cir.1987), where a plaintiff has previously made an application to the Director for compensation benefits, it would be illogical to require the plaintiff to resubmit a second application to the Director and have it rejected again before he can obtain rehabilitation benefits set forth in the act. One rejection of the plaintiff's claim by the Director is enough.
The plaintiff in the instant case had made an application to the Director for compensation benefits which had been rejected and we find that plaintiff should not be required to submit a second application and have it rejected again before she can obtain rehabilitation benefits.
Although we conclude that plaintiff is entitled to rehabilitation services, there was no evidence adduced at trial as to the specifics of the training and education which would be suitable for and beneficial to the plaintiff. Accordingly, we remand the case to the trial court for the taking of additional evidence so as to allow the trial court an opportunity to evaluate the available rehabilitation services and determine what is most appropriate for this particular plaintiff.
Future Medical and Travel Expenses
Plaintiff argues that the trial court erred in failing to award her future medical expenses and that the trial court erred in failing to award certain travel expenses. We find this assignment of error without merit.
Under La.R.S. 23:1203, liability for medical expenses arises only as those expenses are incurred. A plaintiff is not entitled to an award for future medical expenses, but the right to claim such expenses is always reserved to the plaintiff. Bailey v. Zurich American Insurance Company, 503 So.2d 611 (La.App. 4th Cir. *546 1987) and Lester v. Southern Casualty Insurance Company, 466 So.2d 25 (La. 1985). Therefore, plaintiff is not entitled to an award for speculative future medical expenses but retains the right to claim such expenses when they are incurred.
La.R.S. 23:1203 also provides that the employer shall be liable for reasonable travel expenses incurred by the employee in order to obtain medical services. The employer is liable for actual expenses reasonably and necessarily incurred by an injured employee for mileage reasonably and necessarily traveled by the employee in order to obtain medical services. However, there must be evidence of the actual expenses incurred in order for the injured employee to recover such travel expenses. Demery v. D.R. Dupree, 511 So.2d 1268 (La.App. 2d Cir.1987).
Here, the record shows that plaintiff submitted a claim for travel expenses on February 13, 1987, and received reimbursement for these expenses on March 12, 1987. It appears that this is the only claim for reimbursement which was made by plaintiff for such expenses and no testimony was adduced at trial as to any additional expenses. Given the complete lack of evidence as to other travel expenses for which plaintiff has allegedly not been reimbursed, we find that the trial court did not err in failing to make an award based upon these alleged expenses.
Attorney's Fees and Statutory Penalties
Plaintiff argues that the trial court erred in failing to award attorney's fees in an amount in excess of $4000. We find this assignment of error to be without merit.
In its judgment, the trial court found that the termination of benefits was arbitrary, capricious and without probable cause and assessed attorney's fees in the amount of $4000 based upon the time spent by plaintiff's attorney in this matter, including three pre-trial depositions, one of which was taken in New Orleans.
Although the trial court is vested with great discretion in this assessment, we look beyond the judgment to the degree of skill and work involved, the number of court appearances, the depositions, the office work and the time spent in court. It is also appropriate to consider the additional time and effort expended on appeal. Simmons v. Ford, Bacon and Davis Construction Corp., 506 So.2d 1300 (La.App. 2d Cir.1987) and Reynolds v. Wal Mart Stores, Inc., 445 So.2d 490 (La.App. 2d Cir.1984).
After examining the record and the time spent by the plaintiff's attorney in preparing and trying this case, we find that an award of $4000 in attorney's fees is reasonable and not an abuse of the trial court's discretion. However, plaintiff's counsel has expended additional effort in prosecuting this appeal and we increase the award by $750.00 to compensate plaintiff's attorney for the services rendered on appeal.
Plaintiff argues that the trial court erred in failing to award statutory penalties on the entire amount of unpaid compensation benefits to which the court found plaintiff was entitled. As noted earlier, the trial court found that plaintiff was entitled to receive compensation benefits for the two week period beginning in November, 1986 when benefits were discontinued and to benefits for the month of April, 1987. However, the trial court failed to assess any penalties on these unpaid compensation benefits.
La.R.S. 23:1201 provides, in pertinent part, that whenever the employee's right to compensation benefits has been reasonably controverted by the employer or his insurer, the penalties shall not apply. Under La.R.S. 23:1201 if the nonpayment did not result from conditions over which the employer or insurer had no control or if the employer or insurer is not able to reasonably controvert the employee's right to such benefits, then penalties will attach if payment of said benefits is not timely after the employer or its insurer had knowledge of a compensable injury. Stated another way, did the employer or his insurer have sufficient factual and medical information to reasonably counter the factual and medical information presented by the claimant? Clark v. Atlantic Painting Company, 521 *547 So.2d 505 (La.App. 4th Cir.1988) and Chelette v. American Guarantee and Liability Insurance, Inc., 480 So.2d 363 (La.App. 3rd Cir.1985).
Plaintiff's benefits were terminated for the two week period beginning in November, 1986 based upon a report by Dr. Springmeyer shortly after the accident that although surgery was anticipated, he believed plaintiff could return to "light duty" with no use of the left forearm. Benefits were again terminated based upon a report by Dr. Springmeyer dated March 30, 1987 wherein he indicated plaintiff could return to any activity that did not require any real use of her upper left extremity, except lifting a pound or two, or repetitive motions of her hands. After reviewing the evidence, the trial court found that benefits were arbitrarily terminated by the defendants in November, 1986 and the report in March, 1987 did not indicate that plaintiff was being released to return to work.
Considering the content of these reports, the monitoring of plaintiff's condition by defendants and the trial court's finding that the defendants' conduct was arbitrary, capricious and without probable cause, we find that the defendants did not have any factual or medical information which could lead them to believe that compensation was not due to the plaintiff. It appears that the trial court merely overlooked awarding statutory penalties as it found the defendants' refusal to pay benefits arbitrary, capricious and without probable cause and awarded statutory attorney's fees. Accordingly, we amend the judgment of the trial court so as to award statutory penalties on the amount of unpaid compensation for the two week period beginning in November, 1986 and April, 1987.
Plaintiff further argues that she is also entitled to an award of statutory penalties on any benefits for temporary total disability accruing after May 1, 1987. Based upon the entirety of the record, we cannot say that the defendants were unreasonable in disputing plaintiff's entitlement to benefits after that date. The medical and factual information constituted a sufficient basis upon which to reasonably controvert the plaintiff's claim of temporary total disability. Thus, we find that plaintiff is not entitled to an award of statutory penalties on the full amount of compensation benefits accruing after May 1, 1987.
Conclusion
For these reasons:
(1) The judgment of the trial court is AFFIRMED insofar as it awarded plaintiff unpaid compensation benefits in the sum of $776.18 together with judicial interest; refused to award future medical expenses and travel expenses; and found plaintiff was not totally and permanently disabled.
(2) The judgment of the trial court is AMENDED to award statutory penalties on the amount of unpaid compensation found due by the trial court and to increase attorney fees to $4,750.00.
(3) The judgment of the trial court is REVERSED insofar as it found plaintiff was not temporarily totally disabled and there is judgment in favor of plaintiff, Georgia Frazier, and against defendants, Conagra, Inc. and The Hartford, awarding plaintiff temporary total disability benefits in the amount of $139.36 per week commencing May 1, 1987, continuing during her period of disability, together with judicial interest on each past due installment from due date until paid.
(4) It is further ordered that this matter be REMANDED to the trial court for a hearing relating to plaintiff's claim to rehabilitation under the Worker's Compensation Act and for disposition of this claim.
(5) Costs of this appeal are assessed to the defendants-appellees.
SEXTON, Judge, dissenting to the denial of rehearing.
I respectfully dissent from the failure to grant a rehearing herein. This plaintiff has been released by her treating physician and can do some work. I see no significant distinction between this case and Henderson v. Jackson Iron and Metal Co., 535 So.2d 983 (La.App. 2d Cir.1988), writ denied, 536 So.2d 1202 (La.1988), and *548 Brown v. Commercial Union Insurance Co., 548 So.2d 954 (La.App. 3rd Cir.1989).
NOTES
[1] We note that the odd-lot employment, sheltered employment or employment while working in pain exceptions to temporary total disability have been eliminated by Acts 1989, No. 454.