617 So.2d 1351 (1993)
Peter BRUNO, Plaintiff-Appellant,
v.
GUARANTY BANK & TRUST CO., et al., Defendants-Appellees.
No. 92-936.
Court of Appeal of Louisiana, Third Circuit.
May 5, 1993.
*1352 Douglas James Saloom, Lafayette, for Peter Bruno.
Terry L. Rowe, Lafayette, for Guaranty Bank & Trust Co.
Before LABORDE, THIBODEAUX and SAUNDERS, JJ.
THIBODEAUX, Judge.
Plaintiff, Peter Bruno, appeals an adverse judgment in favor of Guaranty Bank & Trust Company and Aetna Casualty Insurance Company, denying his workers' compensation claim. The matter was tried before a hearing officer of the Louisiana Office of Workers' Compensation who found no causal connection between Bruno's claimed disability and a work-related accident. For the following reasons, we reverse and render judgment.

FACTS
On April 14, 1988, in his capacity as employee of Guaranty, Bruno allegedly injured himself pulling on the starter rope to a lawnmower. He claims he immediately felt a pain in his left arm but continued working. The following day, while at work, he again felt pain in his arm and shoulder and, afraid it might be heart-related, went to the hospital.
Heart trouble was ruled out but he was examined by a neurosurgeon who discovered some disc pathology and evidence of spondylosis. After being released from the hospital, he contacted his supervisor and reported the incident.
Bruno began seeing Dr. Thomas Laborde, a neurologist, who had previously treated him for back, shoulder and neck pain caused by automobile accidents in 1978 and 1984. It was Dr. Laborde's opinion that Bruno suffered from an exacerbation of his previous injuries. He put Bruno through extensive therapy which produced minimal results. In January of 1989, after Bruno refused to undergo further work hardening procedures, Dr. Laborde tentatively cleared him for light duty *1353 work, but did not release him from his care.
In August of 1989, Bruno chose to see Dr. Louis Blanda. Dr. Blanda performed an M.R.I. and discovered bulged vertebrae and a herniated disc. He requested that Bruno visit Dr. Robert Rivet for neurosurgical evaluation. At defendants' request, in October of 1989, Bruno also visited Dr. Clifton Shepherd. Dr. Shepherd reviewed the various diagnostic tests performed on Bruno and concluded he was perfectly capable of working and should not receive any further treatment.
After seeing Dr. Shepherd, in January of 1990, Bruno visited Dr. Rivet. He paid for the visit himself because defendants refused to do so. Dr. Rivet agreed with Dr. Blanda that bulging was evident at certain vertebral levels, but would not recommend surgery until a myelogram was performed. Defendants would not pay for the procedure and it was never done. Shortly thereafter, Bruno's compensation was reduced to supplemental earnings benefits and then terminated altogether.
Defendants paid benefits of $331.84 per pay period from the date of the alleged accident until January of 1990. For that month, it was then reduced to $118.32 per pay period. Complete termination of benefits occurred in February of 1990.
Bruno filed a claim with the Office of Workers' Compensation for wrongful termination of benefits, failure to pay necessary medical and travel expenses, and penalties and attorney's fees for arbitrary and capricious refusal to pay compensation. The hearing was held on July 30, 1990. Inexplicably, the hearing officer did not rule until March 20, 1992. When he did so, he found that Bruno failed to prove the causal connection between his health problems and a work-related accident. Consequently, he dismissed the claim.

ISSUES
(1) Whether or not the hearing officer erred in finding Bruno failed to prove he suffered a work-related injury;
(2) Whether or not the hearing officer erred in not finding defendants arbitrary and capricious in denying compensation benefits, and medical and traveling expenses;
(3) Whether or not it was error for the hearing officer to delay two years from the time of trial before issuing a ruling and in denying Bruno's motion for rehearing.

DISCUSSION

A. Employment Related Injury
Normally, whether or not an employment-related injury occurred would be a question of fact subject to review under Rosell v. ESCO, 549 So.2d 840 (La.1989) and Key v. Insurance Company of North America, 605 So.2d 675 (La.App. 2d Cir. 1992). Instead, this matter involves an error of law as it applies to the findings of fact. This issue arises because the hearing officer ruled that Bruno "... never prove[d] that there was a causal connection between the disability which [he] now claims and a work-related accident or injury." We disagree.
LSA-R.S. 23:1021(1), as it existed at the time of the alleged injury, defined "accident " as "... an unexpected or unforeseen event happening suddenly or violently, with or without human fault, and producing at the time objective symptoms of an injury." Though the Workers' Compensation Act is to be given a liberal construction, Bruno is still required to prove his claim by a preponderance of the evidence. Manson v. City of Shreveport, 577 So.2d 1167 (La.App. 2d Cir.1991), writ denied, 580 So.2d 928 (La.1991). However, the evidence is viewed in a light most favorable to claimant. By proving the occurrence of an accident and a subsequent disability, and where there is no proven intervening cause, the presumption is raised that the work-related accident caused the disability. Gobert v. PPG Industries, Inc., 534 So.2d 111 (La.App. 3d Cir.1989), writ denied, 538 So.2d 596 (La.1988). Once Bruno has proven facts sufficient to give rise to the presumption, the burden switches to defendants *1354 to prove the absence of a causal connection between accident and injury. Walton v. Normandy Village Homes Association, Inc., 475 So.2d 320 (La.1985).
Relevant findings of fact by the trial judge were as follows:
FINDINGS OF FACT:
The claimant was employed by Guaranty Bank and Trust as a janitor/porter. This job included general cleaning, moving things and lawn maintenance outside.
On April 14, 1988, Mr. Bruno was trying to start a push-type lawn mower by pulling the starter rope. He testified that he experienced pain in his right arm. He felt pain in his left arm the next day but he nevertheless reported for work. On that day, the 15th, while taking papers to each floor of the bank, his left arm became very painful and then "went dead". He left work and went to the hospital, where he was initially admitted for painful neck and back and numbness of the arm. Dr. Baker, a cardiologist informed the claimant that he was not experiencing heart problems. Dr. DeAraujo, a neurosurgeon, examined the claimant for his neck and back pains. His examination revealed possible pathology at the C5-C6 disc level and evidence of spondylosis. He reported his condition by phone to Mr. Zombreker, his supervisor, upon returning from the hospital.
Dr. DeAraujo referred the claimant to Dr. Laborde for the implementation of an outpatient pain management program. Dr. Laborde had previously treated the claimant for two prior car accident cases in 1978 and 1984. Mr. Bruno's complaint after the 1978, accident was pain in his neck, arm, chest, left shoulder and low back. After the 1984, accident, he complained of pain in his neck, arm, chest, left shoulder and low back. After each of the above incidents, he was released to work with no problems. Dr. Laborde's impression was that Mr. Bruno was experiencing exacerbation or recurrence of pain complaints which he had previously experienced in 1978 and 1984.

* * * * * *
Based on the findings of the hearing officer, it is clear Bruno met his burden. He suffered an accident at workwhich he reported to his supervisor, he received immediate medical attentionwherein objective findings of pathology were made, he received constant medical treatment from which he was never fully released, and no showing was made of an intervening cause. By virtue of these findings, we fail to see how the hearing officer concluded the causal connection was not proved unless he gave great weight to the fact that Bruno had suffered similar injuries in the past and that the past accidents were responsible for Bruno's present claims. If that was his reason, then it was inartfully articulated and likewise erroneous.
The hearing officer found as fact that after the injuries of 1978 and 1984, Bruno was released with no problems. Dr. Laborde's opinion was that the work-related injury exacerbated Bruno's previous injuries. Proof that prior to the accident claimant was asymptomatic but subsequently manifested symptoms of the disabling condition, together with medical or circumstantial evidence establishing a causal connection between the accident and the disabling injury, is sufficient to show that the work-related accident aggravated or exacerbated the preexisting condition. Walton, supra.
From our application of the law to the facts as the hearing officer determined them, we hold that Bruno established the causal connection between the accident and the injury. Furthermore, we hold that whatever injuries Bruno suffered from his previous accident were exacerbated by the work-related accident, and were not the intervening or superseding cause of his current health complaints. Accordingly, we reverse the hearing officer's finding that Bruno failed to meet his burden of proof.

B. Disability
Our finding that Bruno proved the causal connection between accident and injury necessitates determining the extent of his *1355 disability. Because the parties have been in limbo as to the resolution of this case, we believe it equitable and judicially economical to decide this issue ourselves based on the authority of La.C.Civ.P. art. 2164.
The hearing officer denied Bruno's claim because he found no causal connection between the work-related accident and his health complaints. He also stated, for argument purposes, that even if Bruno established the causal connection "... the evidence shows that [the injury] was only a soft tissue muscular strain which has long since healed in the opinion of far too many doctors." Again, we must disagree.
LSA-R.S. 23:1221(1), as it existed at the time of the accident, stated:
Compensation shall be paid under this Chapter in accordance with the following schedule of payments:
(1) Temporary total. For injury producing temporary total disability of an employee to engage in any self-employment or gainful occupation for wages whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured and whether or not an occupation for which the employee at the time of injury was particularly fitted by reason of education, training, or experience, sixty-six and two-thirds percent of wages during the period of such disability.

* * * * * *
Peter Bruno is fifty-six years old, has a sixth grade education and had worked for Guaranty as a porter/janitor for twenty-three years prior to the accident. Since the day of the accident, he has maintained claims of pain in his back, neck and shoulders. The constant in the medical reports is a bulging at the C4-5, C5-6 vertebral level with some spurring also evident. Drs. Laborde, Blanda and Rivet all emphasized the bulging discs. Even Dr. Shepherd acknowledged that pathology, although he claimed it indicated nothing significant. The other physicians put enough significance on it to continue testing and to consider surgery. Dr. Blanda reported that the M.R.I. revealed evidence of a herniated disc as well. Dr. Rivet requested a myelogram be performed before he determined if surgery was warranted but, as defendants refused to pay for it, it was never done.
Contrary to what the hearing officer stated, the majority of the physicians found objective reasons for Bruno's pain sufficient to continue treatment and exploration into its cause. Dr. Shepherd was the only physician who felt there was nothing physically wrong with Bruno. We appreciate the zeal with which Dr. Shepherd embraced his role as examining physician for the defense, but in that role his opinion is entitled to less credence than that of the treating physicians. Fontenot v. T.L. James & Co., Inc., 563 So.2d 909 (La.App. 3d Cir.1990). Based on the medical evidence, we find Bruno has suffered a disabling injury.
We turn now to the effect the injury has on Bruno's ability to work. Nothing in the record indicates that Bruno is capable of employment. The record contained proposed employment from the rehabilitation specialist, James Meaux, which Dr. Laborde signed, signifying that Bruno was physically capable of performing such jobs. This evidence is not convincing. Although Dr. Laborde signed the proposed job documents, he also notified Meaux by letter that Bruno had not been released for anything other than light work. He described light work as anything which would not require lifting of objects of more than ten pounds or require Bruno to remain stationary for longer than sixty minutes. Furthermore, he expressed hesitation at releasing Bruno to do any work at that time, and stated he would not recommend Bruno accept employment until he had a chance to conduct another examination.
We believe Bruno falls within the provisions of the "odd-lot" doctrine. The doctrine has been jurisprudentially determined as pertaining to temporary total disability although not specifically listed in the statute. See, Breaux v. Travelers Insurance Company, 526 So.2d 284 (La.App. 3d Cir.1988); and Frazier v. Conagra, Inc., 552 So.2d 536 (La.App. 2d Cir.1989), writ *1356 denied, 559 So.2d 124 (La.1990). The "odd-lot" doctrine considers the injured party temporarily totally disabled where he or she is capable of only the most limited activities for which a stable employment market is nonexistent. If such a condition is shown, the burden shifts to defendant to prove employment is available. Frazier, supra.
The reality of the situation is Bruno has virtually no education, no formal training and a limited capacity to perform physical labor. Those reasons alone severely hamper his chances of finding employment. We are not convinced by the record that Bruno could even perform the jobs listed by Meaux. While arguably Bruno might be capable of the physical requirements, they fail to take into account his age, lack of formal education or his lack of job skill training. Accordingly, we hold Bruno is temporarily totally disabled under the "odd-lot" doctrine.
In finding him temporarily totally disabled, we order his workers' compensation benefits be paid retroactive to February 1, 1990, in the amount of $331.84 per pay period. Furthermore, Bruno is entitled to the difference between $331.84 and $118.32, per pay period, for the month of January 1990 only, as there was no justification for a reduction to supplemental earnings benefits.

C. Penalties and Attorney's Fees
Bruno claims he is entitled to penalties and attorney's fees based on defendants' arbitrary and capricious failure to pay necessary medical and travel expenses and for the termination of his compensation benefits. By a letter dated November 8, 1989, while Bruno was still being paid compensation benefits, his counsel requested that certain prescribed medications and travel expenses, incurred in obtaining treatment, be paid. These expenses were never paid and no reason for rejection of payment was given.
Under LSA-R.S. 23:1203, defendants are responsible for all necessary medical and travel expenses. Proof of the expenses is offered in the form of the letter requesting reimbursement. Under LSA-R.S. 23:1201.2, defendants had sixty days after receipt of written notice to pay the claims. Defendants offered no reason why they failed to pay the expenses and no evidence to show the expenses were not due. Accordingly, we find defendants owe Bruno for the unpaid medical and travel expenses, evidenced by the letter, in the amount of $493.43. We likewise believe their failure to pay was arbitrary and capricious, but will discuss that issue as it affects the whole claim.
Bruno argues defendants are liable for penalties and attorney's fees for the arbitrary and capricious termination of his benefits. He argues that no explanation was offered by defendants at the time they terminated the benefits, and that no justification can be made for their doing so.
This case is factually similar to Fontenot, supra. In Fontenot, the plaintiff had been injured in an automobile accident while in the course and scope of his employment. Benefits were paid until such time as plaintiff was examined by a physician recommended by defendants. After examining plaintiff, defendants' physician found no objective signs of an injury and, after a subsequent exam, was of the opinion plaintiff could return to work. At that time, benefits were terminated. Plaintiff's treating physician disagreed with defendants' doctor and referred him to Dr. Rivet. Dr. Rivet found objective signs of an injury and recommended further diagnostic testing. Defendants continually refused to pay benefits or for further testing. The trial court found the termination to be arbitrary and capricious and our court affirmed.
Presently, Bruno's original treating physician, Dr. Laborde, never released him to normal work activity. Dr. Blanda, who also treated Bruno, found objective signs in the M.R.I. Dr. Rivet found objective signs but requested further testing, just as he did in Fontenot. The only doctor to find nothing wrong was Dr. Shepherd, the defendants' physician. We stated earlier that the treating physician's opinion is entitled to the greater deference. Particularly *1357 where there are conflicting medical reports, the employer or his insurer should make a reasonable effort to ascertain an employee's exact medical condition before denying or terminating benefits. Duplechain v. Gulf States Utility Co., 468 So.2d 1386 (La.App. 3d Cir.1985); Johnson v. Ins. Co. of North America, 454 So.2d 1113 (La. 1984).
We hold defendant's termination of benefits to be arbitrary and capricious. Absent Dr. Shepherd's report, there were sufficient objective findings of injury to Bruno to warrant continued payment of compensation and treatment until a definitive diagnosis was reached. Under LSA-R.S. 23:1201(B) and (E), Bruno is entitled to penalties amounting to twelve percent of any unpaid compensation installment. This award is based on $331.84 per pay period, per month, since February of 1990. Twelve percent of $331.84 is $39.82 per pay period, which equals $79.64 per month. Bruno has not received a payment in thirty-nine months, ending in April of 1993. Accordingly, defendants are ordered to pay $3,105.96, representing the total amount of penalties due for their arbitrary and capricious failure to pay compensation benefits. Bruno is also entitled to penalties for defendants' failure to reimburse for medical and travel expenses. The amount of unpaid expenses is $493.43; twelve percent of which equals $59.21. Defendants are cast for that amount as well.
Bruno is also entitled to a judgment of attorney's fees under authority of LSA-R.S. 23:1201.2. We find $5,000.00 to be a reasonable amount in light of the effort, evidenced by the record, put forth by Bruno's counsel in preparing this case. See, Thibodeaux v. Woman's Hosp. of Acadiana Foundation, Inc., 578 So.2d 213 (La. App. 3d Cir.1991) and Sharbano v. H. & S. Construction Co., 478 So.2d 779 (La.App. 3d Cir.1985). LSA-R.S. 23:1201.2 make the insurer liable for attorney's fees. As a result, Aetna is ordered to pay $5,000.00 for its arbitrary and capricious failure to timely pay benefits.

D. Delay of Hearing Officer
Although the delay of the hearing officer in rendering a ruling was unreasonably and unjustifiably long, as we have already reversed the ruling on other grounds, it is not necessary for us to address whether or not it rose to the level of reversible error.

CONCLUSION
For the foregoing reasons, the judgment of the hearing officer is reversed. We render judgment in favor of Peter Bruno, and against defendants, finding him temporarily totally disabled and entitled to compensation benefits in the amount of $331.84 per pay period, for the past thirty-nine months, starting February of 1990 and running through April 1993, and totalling $25,883.52. Bruno is also awarded $427.04 representing the amount by which his benefits were wrongfully reduced for the month of January 1990, $493.43 for reimbursement of necessary medical and travel expenses, $3,105.96 in penalties for wrongful termination and denial of benefits and $59.21 for denying reimbursement of necessary medical and travel expenses. Finally, judgment is rendered for Bruno against Aetna for attorney's fees in the amount of $5,000.00.
In summation, judgment is rendered for Bruno and against defendants, Guaranty Bank & Trust Company and Aetna Casualty and Insurance Company, in the amount of $29,969.16. Judgment against Aetna, alone, is rendered in the amount of $5,000.00, for attorney's fees. Defendants are hereby ordered to reinstate compensation benefits at the full amount until such time it is judicially determined that this disability status has changed. All costs of this appeal are charged to defendants.
REVERSED AND RENDERED.