GOTHARD, Judge.
This is a worker’s compensation case. From a judgment in favor of the claimant, the defendant employer appeals.
*867 Wilma Faye Kennedy, then age thirty-three, received an injury to her left wrist in the course and scope of her employment as a floor supervisor at Picadilly Cafeteria in Marrero. The accident occurred on March 2, 1984, when a swinging door struck her wrist as she was passing through with a tray of dishes. She was treated first by Dr. Jack Winters, an orthopedist, who placed her arm in a cast and permitted her to return to work at light duty. Except for a few days, Ms. Kennedy continued to work for twelve weeks in pain until May 27, 1984, when she either was fired, as she testified, or she quit, as alleged by Picadilly. Dr. Winters performed a tenolysis of the extensor tendons in the left wrist on November 15, 1984. She was fitted with a dynamic splint and was instructed to maintain an exercise program at home. When there had been no appreciable improvement in her condition, in July, 1985 Dr. Winters referred her to Dr. Robert Chuinard, an orthopedic surgeon at LSU Medical School. Dr. Chuinard recommended further surgery, which he performed on October 15, 1984 and followed up with weekly checkups, medication, and occupational therapy. On February 7, 1986, at her request, Dr. Chuinard released her to light duty with limited lifting. Compensation benefits were terminated on February 28, 1986.
Ms. Kennedy began working again in May, 1986, changing jobs several times, working part time on occasion, and in January, 1987 was hired by Gulf Coast Cable, where she was still employed as a cashier at time of trial. She complains that ever since the accident she has had very little use of her left hand because it swells, she cannot bend her fingers, and her grasp is so weak that she drops things. She is able to perform cashier duties because she needs only her right hand. Her earnings are considerably less than at Picadilly because she is unable to work overtime.
Suit was filed against Picadilly Cafeterias, Inc. and Aetna Life & Casualty Company on February 26, 1987, seeking additional compensation benefits, plus interest, along with penalties, interest, arid attorney’s fees for arbitrary and capricious refusal to pay the claim.
The matter was heard before a judge on October 27, 1987, who took it under advisement, rendering judgment on January 25, 1988. Ms. Kennedy was found to be permanently partially disabled in accordance with LSA-R.S. 23:1221(3) and entitled to supplemental earnings benefits of $119.53 per week for 426 weeks and all unpaid medical expenses. The defendants were cast for all court costs and legal interest from date of judicial demand plus penalties and attorney’s fees of $2,000 for arbitrary and capricious refusal to pay the plaintiff’s claim.
The issues presented for review are whether the court erred in finding the plaintiff permanently partially disabled and entitled to supplemental benefits and whether penalties and attorney’s fees should have been imposed.

Permanent Partial Disability

The manifest error rule applies to a trial court’s factual finding as to disability. Valley v. American Ins. Co., 510 So.2d 449 (La.App. 3rd Cir.1987). The applicable statute in effect at the time of Mrs. Kennedy’s accident reads as follows:
R.S. 23:1221.
Temporary total disability; permanent total disability; supplemental earnings benefits; permanent partial disability; schedule of payments
Compensation shall be paid under this Chapter in accordance with the following schedule of payments:
[[Image here]]
(3) Supplemental earnings benefits,
(a) For injury resulting in the employee’s inability to earn wages equal to ninety per cent or more of wages at time of injury, supplemental earnings benefits equal to seventy-four percent of the difference between ninety percent of the average monthly wages at time of injury and average monthly wages earned or average monthly wages the employee is able to earn in any month thereafter in any employment or self-employment, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured *868 and whether or not an occupation for which the employee at the time of the injury was particularly fitted by reason of education, training, and experience, such comparison to be made on a monthly basis. Average monthly wages shall be computed as four and three-tenths times the wages as defined in R.S. 23:1021(10).
(b) For purposes of Subparagraph (3)(a), of this Paragraph, the amount determined to be the wages the employee is able to earn in any month shall in no case be less than the sums actually received by the employee, including, but not limited to, earnings from odd-lot employment, sheltered employment, and employment while working in any pain.
(c)(i) Notwithstanding the provisions of Subparagraph (b) of this Paragraph, for purposes of Subparagraph (a) of this Paragraph, if the employee is not engaged in any employment or self-employment, as described in Subparagraph (b) of this Paragraph, or is earning wages less than the employee is able to earn, the amount determined to be the wages the employee is able to earn in any month shall in no case be less than the sum the employee would have earned in any employment or self-employment, as described in Subparagraph (b) of this Paragraph, which he was physically able to perform, and (1) which he was offered or tendered by the employer or any other employer, or (2) which is proven available to the employee in the employee’s or employer’s community or reasonable geographic region.
[[Image here]]
Supplemental earnings benefits are limited to a maximum of 520 weeks.
Permanent partial disability benefits are set out in R.S. 23:1221(4). That section provides scheduled compensation for anatomical loss of use or amputation of various body members at a percentage of previous weekly earnings for a specific number of weeks. To qualify for benefits for loss of use, the loss of physical function must be greater than 50% as established in the American Medical Association Guides to the Evaluation of Permanent Impairment. The treating physician, Dr. Chui-nard, testified by deposition taken on September 3, 1987 that upon discharge Ms. Kennedy had made no complaints of pain, had full motion in her fingers, could dorsi-flex (bend back) her wrist to 60 degrees, could palmar flex to 45 degrees, and her extensor tendon over the “MP” joint of her little finger occasionally snapped. Her grip strength as measured on the dyna-mometer was only 20 pounds; however, he felt she was restricting her use of the hand in that test. She returned the next month, complaining of mild pain and swelling with use of the hand, which he assured her was normal during a recovery period. In April, 1986 she came back, complaining of weakness, for which he recommended that she continue the previously prescribed exercises to strengthen her hand. He estimated a 10% disability of the wrist. He testified that he felt no further surgery was indicated but he could not account for her complaint of residual weakness in her grasp. On cross-examination he listed several possible anatomical sources of a weakened grip: sudden, unexpected pain; lack of tendon excursion, preventing full flexion of the fingers; a neurological problem; and disease of the muscles. When asked for recommendations he suggested an evaluation by a hand and upper extremity surgeon to rule out further anatomic abnormalities. If none were found he felt she would benefit from a vigorous hand therapy program or work hardening program.
Ms. Kennedy’s attorney had referred her to Dr. Harold M. Stokes, an orthopedic surgeon, for evaluation on August 4, 1987. His written report was accepted into evidence, and his summary reads as follows:
IMPRESSION: This patient is status post extensor teno synovectomy of the dorsum of the left wrist. As a result, she is unable to fully flex her fingers when her wrist is in flexion. She has a permanent partial impairment of 20% of the left hand because of this limitation. She is not a candidate for any further surgery. I believe that she can be using the left upper extremity in an unrestricted fashion.
*869 In denying the defense’s motion to dismiss, the trial judge stated from the bench that, based upon his observation of Ms. Kennedy at trial, it was obvious to him that she “could not sustain any protracted period of use of that hand, picking or lifting up of anything,” and that she could not return to carrying trays.
The defendant argues that there was no evidence of substantial pain. While his reading of the record is correct in that respect, section (3)(a) of R.S. 23:1221 does not require that the person be disabled because of pain, but only that the injury results in his “inability to earn wages equal to ninety per cent or more of wages at time of injury.”
The plaintiffs disability, though permanent, does not fit into the benefit schedule of permanent partial disability set out in R.S. 23:1221(4), as the loss of physical function in the upper extremity is not greater than 50%. R.S. 23:1221(4)(q). However, the record supports a finding of disability that entitles her to supplemental benefits and we affirm the trial judge’s finding in that regard.
Ms. Kennedy is limited in her employment by being unable to use her left hand even to type. Dr. Chuinard believed rehabilitation therapy might improve her condition and recommended that she be reevaluated for further treatment. Accordingly, we shall remand to the trial court so that he may order a medical evaluation of Ms. Kennedy’s left hand. Smith v. Georgia Cas. & Sur. Co., 503 So.2d 720 (La.App. 3rd Cir.1987).
As to the court’s award of a fixed sum, $119.53 per week for 426 weeks, our review of the statute indicates that LSA-R. S. 23:1221(3) provides that the comparison between average monthly wages at time of injury and average monthly wages earned or average monthly wages the employee is able to earn in any month thereafter is “to be made on a monthly basis.” (Emphasis supplied.) As the award of a fixed sum is clearly wrong, we shall remand to the trial court for calculation of supplemental earnings benefits in accordance with the statute.

Penalties And Attorney’s Fees

The appellant asserts that the compensation benefits were not terminated arbitrarily and capriciously. The employer's action was taken in response to a release from Dr. Chuinard, Ms. Kennedy’s treating physician, and no conflicting medical evidence was presented. A termination of compensation will not be held to be arbitrary and capricious where the decision is based upon competent medical evidence. Martin v. H.B. Zachry Co., 424 So.2d 1002 (La.1982). Accordingly, we reverse the judgment as to the award of penalties and attorney’s fees.

Decree

We affirm the judgment appealed from insofar as it finds in favor of the plaintiff, Wilma Faye Kennedy, and against the defendants, Picadilly Cafeterias, Inc. and Aet-na Life & Casualty Insurance Company, finding Wilma Faye Kennedy to be permanently partially disabled and entitled to supplemental earnings benefits; but we vacate the judgment as to the amount of the award, $119.53 per week for 426 weeks, and remand to the trial court for determination of benefits in accordance with LSA-R.S. 23:1221(3), beginning February 28, 1986.
We reverse the judgment insofar as it assesses penalties and attorney’s fees against defendants, Picadilly Cafeterias, Inc. and Aetna Life & Casualty Insurance Company for arbitrarily and capriciously refusing to pay plaintiff’s claim.
In all other respects, the judgment is affirmed. In addition, we remand with instruction to the trial judge to order a medical evaluation of the plaintiff, Wilma Faye Kennedy, for the purpose of determining need of further medical treatment and/or rehabilitation therapy.
AFFIRMED IN PART, VACATED IN PART, REVERSED IN PART, AND REMANDED WITH INSTRUCTION.