619 So.2d 639 (1993)
Vicki P. TERRO, Plaintiff-Appellee,
v.
WMCO, INC. and Hartford Accident and Indemnity Co., Defendants-Appellants.
No. 92-778.
Court of Appeal of Louisiana, Third Circuit.
May 5, 1993.
Rehearing Denied June 25, 1993.
*640 Michael Benny Miller, Crowley, for plaintiff-appellee Vicki P. Terro.
Katherine Marie Loos, Lafayette, for defendants-appellants WMCO, Inc. and Hartford Acc. and Indem. Co.
Before DOMENGEAUX, C.J., and GUIDRY and WOODARD, JJ.
GUIDRY, Judge.
This is a worker's compensation case. Plaintiff, Vicki Terro, was injured in an automobile accident on April 23, 1988, while in the course and scope of his employment as a service technician with WMCO, Incorporated. On July 12, 1990, Terro filed this claim with the Office of Workers' Compensation against WMCO and its compensation insurer, Hartford Accident and Indemnity Company. The hearing officer determined that Terro was entitled to supplemental earnings benefits (SEB) based on an average monthly wage rate of $2,062.52 from March 14, 1990 through the completion of a six-week work hardening program "and as long as his disability continued". (Emphasis ours) Against this amount, the hearing officer awarded the defendants credits for regular wages earned by Terro after March 14, 1990 and for $1,020 allegedly paid to Terro by Hartford while he was simultaneously working for and receiving regular wages from WMCO. The hearing officer also concluded that the defendants were not arbitrary and capricious and, thus, denied plaintiff's claim for penalties and attorney's fees. On plaintiff's motion for a new trial, plaintiff's average monthly wage rate was amended to $2,359.75.
Defendants appealed and plaintiff answered the appeal. For the reasons which follow, we amend the SEB award and reverse the credit granted defendants for $1,020. In all other respects, we affirm the judgment.

*641 FACTS

Terro was involved in a serious automobile accident in Vermilion Parish during the early morning hours of April 23, 1988. He injured his neck and right shoulder and was initially treated by Dr. William Bernard, a family practitioner. Terro received worker's compensation benefits from May 10, 1988 through July 5, 1988. However, on May 18, 1988, he returned to light duty work until June 7, 1988, during which time he was paid both regular wages and workers' compensation benefits. He remained under the care of Dr. Bernard after he ceased working for a second time from June 7, 1988 to July 6, 1988, when he was released by Dr. Bernard to return to full duty employment.
According to Terro, although he returned to full duty employment in July of 1988, he continued to experience pain in his neck and right shoulder. His job entailed carrying awkward and heavy equipment such as toolboxes, gas detectors, cameras, and wires over and around many "obstacles" located on oil rigs. In March, 1989, Terro was seen by Dr. Jack Hurst, a neurosurgeon, whose neurological examination revealed no objective signs of injury. Dr. Hurst conducted several diagnostic tests including a myelogram, a post-myelogram CT scan, and a magnetic resonance imaging (MRI) test, all of which revealed no significant disc abnormalities and no nerve root impingement. On June 7, 1989, Dr. Hurst referred Terro to Dr. John Cobb, an orthopedic surgeon, for further evaluation. However, he was unable to see Dr. Cobb because Hartford declined to guarantee payment for Dr. Cobb's services, and Terro could not otherwise afford the cost of the evaluation. Dr. Hurst subsequently referred plaintiff to a physical therapist, Patricia Boulet, who first saw him on August 8, 1989 and detected muscle spasms in Terro's neck. Terro underwent therapy on a regular basis from this date through the hearing date of this matter, January 1, 1991. According to Terro, the therapy provided only temporary relief from his neck and shoulder pain. The therapist requested that Terro be placed on light duty work on several occasions during 1989 and 1990. WMCO complied with her requests when made.
On March 14, 1990, while being transported in a helicopter from an offshore oil rig, Terro's pain was allegedly aggravated by the helicopter's vibration. He saw Dr. Hurst on this date and complained once again of neck and right shoulder pain. He did not return to work after this date, and, on June 25, 1990, WMCO terminated his employment and hired someone to replace him. On July 3, 1990, Terro underwent a second MRI which revealed a right sided spondylosis at the C5-6 level. On July 12, 1990, plaintiff filed this claim with the OWC. Defendants filed an answer in which they urged that, because the accident occurred in 1988, plaintiff's right to claim benefits had prescribed.[1] On December 13, 1990, Terro underwent an independent medical examination performed by Dr. John Clifford, a neurosurgeon, who found no positive objective findings of injury to the neck and upper extremities.
At the hearing before the OWC, Terro testified that, since the accident, he has had continuous muscular pain problems in his neck and right shoulder. Since his last day of work with WMCO, he earned approximately $460 playing accordion in a Cajun French band. He stated that playing music tends to aggravate his neck and shoulder pain on the day after he plays. He has not worked steadily since March 14, 1990, nor has he been offered employment. As of the hearing date, Terro felt that he could not successfully return to his old job but would at least attempt full duty work if given the opportunity. In late 1990, he applied for unemployment benefits, which were contested by WMCO.
Kenneth Boudreaux, WMCO's general manager, testified that, after Terro left on March 14, 1990, he informed Terro not to return to work until he was fully capable *642 of performing his job. Boudreaux explained that this advice was meant to prevent Terro from suffering further injury. He regularly contacted Terro after this date to check on his progress. He stated that WMCO tried to cooperate with Terro as much as possible and that Terro knew "he could talk to us" anytime. Finally, in late June, he decided to terminate Terro's employment with WMCO. At the time, it was evident that Terro would not be returning anytime soon, and the company was in need of personnel to handle its increasing volume of business. According to Boudreaux, WMCO contested Terro's right to receive unemployment benefits because, in his judgment, Terro was incapable of working at his former employment due to his personal physical problems.
Dr. Hurst, plaintiff's treating physician, testified by deposition taken January 1, 1991, two days prior to the hearing. He first examined Terro on March 22, 1989, at which time Terro complained of cervical pain radiating into his right shoulder region. He characterized the first round of diagnostic tests performed in 1989 as "unremarkable" and advised Terro to continue with conservative treatment, eventually recommending physical therapy. As for the July 1990 MRI which revealed C5-6 spondylosis, Dr. Hurst stated that there was no correlation between the condition and plaintiff's physical symptoms. Specifically, he explained that, with a C5-6 level hernia, radiating pain would be symptomatic into the arm to the thumb and forefinger, not just to the shoulder. Dr. Hurst opined that plaintiff suffered a musculoligamentous injury which would be best resolved by returning to heavy duty, strenuous activity. He thought that Terro was capable of returning to this level of employment activity.
Dr. Clifford testified by deposition taken December 27, 1990. He conducted an independent medical examination on December 13, 1990. He initially found no muscle spasms in plaintiff's neck but noted mild bilateral tenderness on palpation of the area. Dr. Clifford reviewed the films of the prior diagnostic tests and concluded that the July 1990 MRI (the only test with an anomalous result) showed "minimal spondylitic changes at C5-6". He stated that the myelogram and CT scan, which showed no anomalies, were more accurate in this situation, and that the 1990 MRI spondylosis, which he characterized as a very subtle change, was probably "artifactual and not true". Dr. Clifford agreed with Dr. Hurst's assessment that plaintiff's physical symptoms did not correlate with the C5-6 spondylitic changes shown on the 1990 MRI. He further opined that Terro had reached maximum medical improvement and needed no further diagnostic tests or any surgery. He felt that, unless it was very heavy labor, Terro could return to work but might initially need conditioning if he had not worked in over two and one-half years. Patricia Boulet, plaintiff's physical therapist, testified that he initially complained of front and back neck pain. On examination, she detected tightness and muscle spasms in the cervical area. During the entirety of the therapy, Boulet stated that her treatments would provide Terro with temporary relief and then the pain symptoms and muscle spasms would return. She further explained that his complaints of pain have consistently been centered in his neck and right shoulder.
Based mostly upon the fact that Terro was undergoing therapy, medical treatment, and diagnostic testing during much of 1990, the hearing officer found that Terro was disabled from March 14, 1990 and entitled to SEB payments from that date until the completion of a six-week work hardening program. She concluded that Terro was entitled to this program based solely upon the testimony of Dr. Clifford that Terro may need some conditioning prior to returning to work. Defendants assert that the SEB award and the ruling that Terro is entitled to undergo a work hardening program were error. Plaintiff, on the other hand, specifies seven errors which raise the following three issues:
(1) Defendants' entitlement to a credit or setoff for wages and worker's compensation;

*643 (2) Plaintiff's entitlement generally to future medical treatment and specifically to an evaluation by Dr. Cobb; and,
(3) Whether defendants were arbitrary and capricious in handling plaintiff's claim.

SUPPLEMENTAL EARNINGS BENEFITS AND WORK HARDENING
Generally, a claimant's entitlement to SEB is provided for in La.R.S. 23:1221(3). In Lubom v. L.J. Earnest Inc., 579 So.2d 1174, 1180-1181 (La.App. 2d Cir. 1991), our brethren of the Second Circuit succinctly explained the burden of proof thereunder as follows:
The claimant in an SEB case must prove by a preponderance of evidence that his work-related injury rendered him unable to earn 90 percent of his pre-injury wages. Barton v. Wausau Ins. Co., 545 So.2d 1248 (La.App. 2d Cir.1989); Duncan v. State, DOTD, 556 So.2d 881 (La.App. 2d Cir.1990). Once the SEB claimant establishes his prima facie case, the burden shifts to the employer to show that the claimant is physically capable of work and that the work was offered or available in the reasonable geographic region. Barton, supra; Williams v. Avondale Indus., Inc., 521 So.2d 491 (La.App. 4th Cir.1988). If the employer meets this burden, then the employee must show by clear and convincing evidence, unaided by any presumption of disability, that he is unable to perform the employment offered or available solely as a consequence of substantial pain. LSA-R.S. 23:1221(3)(c)(ii).
See also Tassin v. Cigna Insurance Company, 583 So.2d 1222 (La.App. 3rd Cir. 1991). The trier of fact's determinations concerning work-related disability are factual, entitled to great weight and will not be disturbed on appeal unless clearly wrong. When the findings are reasonable in light of the entire record, the appellate court cannot reverse the trier of fact's choice between two permissible views of the evidence. Britton v. Morton Thiokol, Inc., 604 So.2d 130 (La.App. 2d Cir.1992); Valley v. American Insurance Co., 510 So.2d 449 (La.App. 3rd Cir.1987), writ denied, 514 So.2d 130 (La.1987).
The record in the case sub judice reveals that Terro ceased working on March 14, 1990 because of pain and, thereafter, underwent treatment and diagnostic testing under Dr. Hurst along with continued physical therapy. Although all diagnostic tests were negative, plaintiff continued to complain consistently of pain in his neck and shoulder. While it is true that, until his termination on June 26, 1990, WMCO had an outstanding offer to Terro to return to his former employment, the company also challenged his entitlement to unemployment benefits in early 1991 because, as Boudreaux stated, he felt that Terro was physically incapable of performing his former job.
Clearly, plaintiff's claim for SEB is based solely upon his subjective complaints of pain. Neither Dr. Hurst nor Dr. Clifford could find any objective symptoms to corroborate his subjective complaints. The hearing officer reasoned that, because plaintiff was undergoing treatment, testing, and therapy during 1990, he was disabled during this period to the extent that he was entitled to receive SEB compensation. Despite what we perceive as relatively weak evidence, we cannot say that the hearing officer clearly erred in finding Terro entitled to SEB for the period from March 14, 1990 to the date of his discharge by Dr. Hurst, his treating physician, and during a designated period of work hardening.
Dr. Clifford, on December 27, 1990, and Dr. Hurst, on January 7, 1991, both testified that Terro could and should return to heavy labor employment, without restriction, although such work might generate some pain. Dr. Clifford qualified this statement in that he felt that plaintiff might need some conditioning prior to returning to work. The determination that Terro was entitled to a six-week work hardening program is also not clearly wrong. It was error, however, for the OWC to further qualify the term of SEB eligibility with the phrase, "as as long as his disability *644 continues". There is no evidence in the record to support a finding that Terro will suffer any disability beyond the date of his discharge by Dr. Hurst and the work hardening program. We will amend the award to reflect that Terro is entitled to SEB for the period from March 14, 1990 to February 18, 1991, which is six weeks following his discharge by Dr. Hurst.

CREDITS OR SETOFFS
The hearing officer ruled that the SEB award was subject to a setoff in favor of defendants "against any wages earned... from March 14, 1990" and, also, "in the amount of $1020.00 for all worker's compensation benefits previously paid ... while VICKI P. TERRO was receiving his regular wages with WMCO ...". Plaintiff asserts on appeal that defendants are not entitled to these two setoffs because they failed to specifically plead them as affirmative defenses in their answer.
Defendants are clearly entitled to a credit against the SEB award for wages earned following March 14, 1990. However, the hearing officer erred in allowing defendants an offset for the $1,020.
Under La.C.C.P. art. 1005, a setoff is an affirmative defense which must be specifically pleaded in the defendant's answer. C & D Pressure Testing v. Estate of Darbonne, 469 So.2d 1170 (La.App. 3rd Cir.1985). The record indicates that neither defendant specifically sought credit for the $1,020 credit allowed by the OWC judgment. Accordingly, the $1,020 credited in favor of defendants against the SEB award to Terro is reversed and the credit for wages earned after March 14, 1990 is affirmed.

MEDICAL TREATMENT
Plaintiff next contends that the hearing officer erred in failing to provide in the judgment for his entitlement to reasonable and necessary medical treatment. Additionally, Terro claims error in the denial of treatment by Dr. Cobb.
The employer has a statutory duty to furnish the employee-claimant with all necessary medical treatment. La.R.S. 23:1203. Apparently, plaintiff desired to have defendants obligated in the judgment to pay his future medical expenses. Under La.R.S. 23:1203, liability for medical expenses arises only as they are incurred. A plaintiff is not entitled to an award for future medical expenses, but the right to claim such expenses is always reserved to the plaintiff. Lester v. Southern Casualty Insurance Co., 466 So.2d 25 (La.1985). The hearing officer did not err in declining to state in judgment that plaintiff was entitled to future medical expenses.
As for the denial of employer-provided treatment by Dr. Cobb, the hearing officer commented at trial that "We've got enough doctors". Clearly, two neurosurgeons agree that Terro had a muscle or ligament strain which was resolved albeit with some lingering pain and was capable of returning and should return to full duty employment. These conclusions result from nearly two years of comprehensive diagnostic tests and physical therapy. With all due respect to Dr. Cobb, we fail to see how evaluation by Dr. Cobb would be of any benefit to him given the fact that, according to Drs. Hurst and Clifford, he has reached maximum medical improvement and has been released to full duty. The hearing officer was well within her discretion to deny plaintiff the right to see Dr. Cobb at defendant's expense because such further evaluation was not necessary.

PENALTIES AND ATTORNEY'S FEES
Plaintiff further contends the hearing officer erred in failing to find defendants were arbitrary and capricious and thus liable for statutory penalties and attorney's fees under La.R.S. 23:1201(E) and 1201.2, respectively. We do not agree.
The cited statutes are penal in nature and must be strictly construed. Fusilier v. Liberty Rice Mill, Inc., 569 So.2d 1050 (La.App. 3rd Cir.1990). Additionally, an employee's right to receive compensation benefits will be deemed reasonably controverted if the employer or insurer had a reasonable basis for believing that compensation *645 was not due. Guidry v. United Furniture Distributors, Inc., 544 So.2d 100 (La.App. 3rd Cir.1989). This claim was filed by Terro on July 12, 1990, over two years after the date of the accident. Hartford agreed to pay for plaintiff's medical expenses (with the aforedescribed exception), but it decided not to pay Terro weekly benefits based on medical reports that he was capable of returning to full duty. Under the circumstances, the hearing officer did not clearly err in denying penalties and attorney's fees.

DECREE
For the above and foregoing reasons, the judgment of the OWC is amended to reflect that plaintiff, Vicki Terro, is entitled to received SEB for the period from March 14, 1990 to February 18, 1991 based on an average monthly wage rate of $2,359.75. Further, the setoff granted defendants in the amount of $1,020 is reversed. In all other respects, the judgment is affirmed. Appellants are cast with all costs of this appeal.
REVERSED IN PART; AMENDED IN PART; AFFIRMED IN PART; AND RENDERED.
WOODARD, J., dissents in part with assigned reasons.
WOODARD, Judge, dissenting.
I agree with the majority except insofar as the majority affirms the hearing officer's determination that Hartford was not arbitrary and capricious in refusing to allow plaintiff treatment by Dr. Cobb for the following reasons:
La.R.S. 23:1121 B maintains that:
The employee shall have the right to select one treating physician in any field or specialty. After his initial choice the employee shall obtain prior consent from the employer or his worker's compensation carrier for a change of treating physician within that same field or specialty. The employee, however, is not required to obtain approval for change to a treating physician in another field or specialty.
Dr. Cobb would have been plaintiff's first chosen physician in the field of orthopedic surgery and one whose treatment Dr. Hurst felt was necessary at that time.
Thus, he had a right to seek treatment from him without first obtaining the consent of defendants. The fact that he had numerous doctors in other specialties is irrelevant according to my reading of the law.
Accordingly, I would reverse the hearing officer's finding that the defendants were not arbitrary and capricious as it relates to their refusal to pay for treatment by Dr. Cobb had plaintiff gone to him anyway.
I would cast costs of this appeal to both parties equally.
NOTES
[1] Hartford has not pursued the prescription issue and makes no mention of same in their brief on appeal.