645 So.2d 260 (1994)
Jerry BROWN, Plaintiff-Appellee
v.
VERNON SAWYER, INC., Defendant-Appellant.
No. 25959-CA.
Court of Appeal of Louisiana, Second Circuit.
October 26, 1994.
*262 Robert M. Baldwin, Monroe, for appellant.
Curtis D. Street, Monroe, for appellee.
Before HIGHTOWER, VICTORY, BROWN, WILLIAMS and STEWART, JJ.
WILLIAMS, Judge.
In this workers compensation case, defendant, Vernon Sawyer, Inc., appeals a judgment awarding the claimant, Jerry Brown, supplemental earnings benefits, penalties and *263 attorney fees. Defendant assigns as error the trial court's calculation of claimant's weekly wage, the award of past due and future supplemental earnings benefits and the imposition of penalties and attorney fees. For the reasons expressed, we amend and affirm.

FACTS
At the time of his injury, claimant was employed by the defendant as a truck driver. Claimant used his tractor-trailer, which he leased to the defendant, to haul freight. In addition to hauling freight, claimant was responsible for loading and unloading the trailers. On February 2, 1989, claimant was unloading a trailer in Little Rock, Arkansas when he experienced pain in his left hip and left leg. When claimant returned to the defendant's office headquarters in Bastrop, Louisiana, he reported his injury to the dispatcher. The following day, claimant was sent to Houston, Texas. While unloading a trailer in Texas, he stepped off a dock and experienced increased pain in his left hip and leg.
Claimant continued to work in pain until he sought medical treatment from Dr. Floyd Jones, an osteopathic physician, in March 1989. Because Dr. Jones was unsuccessful in conservatively treating the claimant, he referred claimant to Dr. Don Irby, a neurosurgeon. Dr. Irby performed a decompressive lumber laminectomy on July 14, 1989. Dr. Irby released claimant on December 6, 1989 with a permanent partial disability rating of twenty percent and a restriction on the amount of time that claimant could sit or stand to four hours out of an eight-hour day. He also limited the amount of weight that claimant could lift to twenty pounds. Dr. Irby felt claimant could probably continue as a long haul truck driver if he could stop, walk around and rest his back from time to time. However, he opined that the ultimate issue of whether claimant could continue to work as a truck driver depended upon how well the claimant tolerated traveling.
Defendant paid claimant $267.00 per week in temporary total disability benefits until September 15, 1990. Defendant terminated claimant's worker's compensation benefits after claimant informed defendant he would be leasing his truck to Merchants Dutch Express (MDE) and he had hired a driver to drive his truck. Claimant's driver reneged on their agreement and claimant had to drive his truck. Claimant testified he could not continue working for MDE because he was required to do long hauls, which caused him back pain.
In February 1991, claimant began working for Schneider Specialized Carriers, Inc. (Schneider). Because he continued to experience pain while driving, claimant quit working after a month and sought additional medical treatment. Claimant filed suit when the defendant refused to reinstate his workers compensation benefits.
The trial court found claimant had substantial difficulty in trying to return to his occupation as a truck driver and eventually was unable to continue working. It concluded that since claimant was unable to earn ninety percent or more of the wages he was receiving at the time of his injury, he was entitled to supplemental earnings benefits. The trial court also awarded claimant penalties and $7,000 in attorney fees.

DISCUSSION

Calculation of Benefits
Claimant's wages are to be calculated in accordance with LSA-R.S. 23:1021(10)(d), which provides in pertinent part:
If the employee is employed on a unit, piecework, commission, or other basis, his gross earnings from the employer for the twenty-six week period immediately preceding the accident divided by the number of days the employee actually worked for the employer during said twenty-six week period and multiplied by four....
The defendant contends the trial court erred in its calculation of claimant's gross earnings. The trial judge used the "actual expense" method to calculate claimant's gross earnings, i.e., he deducted claimant's expenses from the gross amount he received from his employers. Defendant contends the trial court erred in using the "actual expense" method because the gross amount *264 claimant received included compensation for the lease of his truck. Defendant argues that since truck drivers are customarily paid twenty percent of the gross receipts for each load hauled, only twenty percent of the gross receipts constitute claimant's gross earnings and any amount paid in excess of this twenty percent is compensation for the lease of claimant's truck.
In Herrin v. Georgia Casualty & Surety Co., 414 So.2d 1323 (La.App. 2d Cir. 1982), this court concluded a claimant's gross earnings only includes the return on claimant's labor. See also France v. A & M Wood Co., 566 So.2d 106 (La.App. 2d Cir.1990). Thus, claimant's expenses and any sums he received as compensation for the rental of his truck are not to be included as his gross earnings.
There is ample evidence in the record to support defendant's argument that the industry standard in regard to compensation for a truck driver's labor is twenty percent of the gross receipts for each load hauled. When claimant drove for his uncle, his brother and Leslie Cattle Company, he received twenty percent of the gross receipts for each load hauled. Further, after claimant's surgery, he hired another driver to drive his truck and paid this driver twenty percent of the gross receipts for each load hauled. Therefore, in reaching a determination of whether claimant is entitled to supplemental earnings benefits, we will use twenty percent of the gross receipts of each load hauled as claimant's gross earnings.

Eligibility for Supplemental Earnings Benefits
An injured employee seeking supplemental earnings benefits has the burden of proving by a preponderance of the evidence that his injury resulted in an inability to earn ninety percent or more of the wages he was receiving at the time of his injury. LSA-R.S. 23:1221(3)(c)(i); Prudhomme v. DeSoto Professional Home Health Services, 579 So.2d 1167 (La.App. 2d Cir.1991).
Dr. Irby testified claimant cannot load and unload trailers if the weight of the item to be moved exceeds twenty pounds. He also stated claimant can sit or stand for only four hours out of an eight hour day and whether claimant could continue working as a truck driver depended upon how well he tolerated traveling. When claimant is driving, he must stop and rest periodically. Claimant testified he could not continue working for MDE because he was required to do long hauls, which caused back pain. Further, his inability to assist in unloading the trailers caused friction with the customers. Claimant testified he worked for another trucking company, Schneider, for two months. However, he had to terminate his employment with Schneider because he was required to travel long distances within a definite period of time. He could not complete the trips within the required time period because of back pain. Claimant also testified his income has decreased because it takes longer to complete a trip. Thus, claimant has established that his injury has affected his income.
Using the industry standard of twenty percent of the gross load receipts as claimant's gross earnings, we must determine whether claimant's injury has rendered him unable to earn ninety percent or more of his pre-injury wages.
Gross load receipts for the twenty-six week period before claimant's injury were $44,966.39.
$44,966.39 × 20% = 8,993.28 gross earnings
$8,993.28 = $69.18
---------
 130
$69.18 × 4 = $276.72 average weekly wage
$276.72 × 4.3 = $1,189.90 average monthly
 wage
90% × $1,189.90 = $1,070.91
When claimant's monthly wage is less than $1,070.91, he is entitled to supplemental earnings benefits. The following reflects claimant's gross load receipts multiplied by twenty percent to yield his gross earnings during his period of employment with MDE and Schneider:
September  $4,820.90 × 20% = $964.18
October  $7,778.49 × 20% = $1,555.70
November  $8,243.22 × 20% = $1,648.65
December  $1,036.32 × 20% = $207.27
January  $1,346.74 × 20% = $269.35
February  $6,370.36 × 20% = $1,274.08
March  $5,450 × 20% = $1,090.20
*265 Thus, at the time of trial, claimant was entitled to supplemental earnings benefits for the months of September, December and January. Since claimant received weekly benefits for the month of September, no additional benefits are due. Accordingly, under the provisions of LSA-R.S. 23:1221(3)(a), claimant is entitled to supplemental earnings benefits of $654.50 for December 1990, and $613.09 for January 1991.
Future Supplemental Earnings Benefits
Defendant also contends the trial court erred in awarding claimant future supplemental earnings benefits. Defendant asserts LSA-R.S. 23:1221(3)(a) requires a monthly determination of whether claimant's disability prevented him from earning ninety percent or more of his wages. It claims that if claimant is awarded future supplemental earnings, he could stop working for any reason and receive the maximum benefit available.
Contrary to defendant's assertion, a claimant cannot simply stop working and receive benefits. If claimant is not working, Section 1221(3)(a) requires a court to consider what claimant "is able to earn" when determining whether he is entitled to supplemental earnings benefits. Section 1221(3)(a) does not require that the court make a determination of whether the claimant's disability caused him to earn less than ninety percent of his pre-injury wages on a monthly basis. This statute provides that the comparison between claimant's average monthly wage at the time of injury and claimant's average monthly wage earned or average monthly wage the claimant is able to earn in any month thereafter be made on a monthly basis. The cases cited by defendant in support for its argument that benefits are to be determined monthly are inapplicable. In each case, this court declined to fix the duration of claimant's entitlement to benefits. LSA-R.S. 23:1221(3) allows recovery of supplemental earnings benefits for no more than 520 weeks but gives conditions under which they may be terminated sooner. See Hinton v. Scott Hydraulics, Inc., 614 So.2d 820 (La.App. 2d Cir.1993), writ denied, 618 So.2d 413 (La. 1993); Kennedy v. Picadilly Cafeterias, Inc., 537 So.2d 866 (La.App. 2d Cir.1989); Woolsey v. Cotton Bros. Bakery Co., Inc., 535 So.2d 1119 (La.App. 2d Cir.1988), writ denied, 537 So.2d 1168 (La.1989). In the instant case, the trial court did not fix claimant's benefits for a specified period of time; it simply stated claimant's benefits were "not to exceed a total of 520 weeks." Thus, defendant's argument is ill-founded.

Credit
Defendant argues it is entitled to a credit for the excess temporary total benefits paid to claimant. Dr. Irby released claimant on December 6, 1989, yet defendant continued to pay temporary total benefits until September 1990. Defendant asserts the excess payments of temporary total benefits should be credited to any supplement earnings benefits found to be due.
Defendant asserted its right to claim a credit for the first time on appeal. A claim for setoff is an affirmative defense that must be specifically pleaded. See LSA-C.C.P. Art. 1005; Terro v. WMCO, Inc., 619 So.2d 639 (La.App. 3d Cir.1993). Defendant argues the pleadings have been enlarged because claimant failed to object to evidence which showed that benefits were paid from the time of claimant's release from Dr. Irby's care until it terminated his benefits.
As a general rule, pleadings may be enlarged by evidence adduced without objection when such evidence is not pertinent to any other issue raised by the pleadings and, hence, would have been excluded if objected to timely. Shrader v. Life General Security Ins. Co., 588 So.2d 1309 (La.App. 2d Cir.1991), writ denied, 592 So.2d 1317 (La. 1991). In this case, the evidence concerning the length of time claimant received temporary total benefits was introduced during claimant's trial testimony to verify that he had received weekly benefits until they were terminated in September 1990. The affirmative defense of setoff, which was not raised in the pleadings, was not tried either by the express or implied consent of the parties. Therefore, the pleadings were not enlarged by the evidence to include the defense of setoff. See Shrader, supra.
*266 Penalties and Attorney Fees
As its final argument, defendant challenges the trial court's award of penalties and attorney fees. Alternatively, defendant argues the award of $7,000 in attorney fees is excessive.
LSA-R.S. 23:1201(E) directs the trial court to assess a twelve percent penalty for nonpayment unless the employer or the insurer "reasonably controverted" claimant's right to benefits. A claim is reasonably controverted if the employer or the insurer had sufficient factual and medical information to reasonably counter the factual and medical information presented by the claimant. Woolsey, supra. Under LSA-R.S. 23:1201.2, the claimant is entitled to attorney fees if the failure to pay benefits is found to be arbitrary, capricious, or without probable cause. An award of attorney fees is precluded when the employer asserts a good faith defense. Holmes v. International Paper Co., 559 So.2d 970 (La.App. 2d Cir.1990). The determination of whether an employer should be cast with penalties and attorney fees is a question of fact and the trial court's findings shall not be disturbed on appeal absent manifest error. Bradley v. Justiss Oil Co., Inc. 618 So.2d 646 (La.App. 2d Cir.1993).
The trial court noted that based on defendant's calculations, plaintiff should have been paid supplemental earnings benefits. The court further noted that although defendant contended claimant was not paid supplemental earnings benefits because causation was at issue, defendant did not present any evidence to dispute claimant's testimony or the medical evidence concerning causation. The trial court concluded defendant failed to reasonably controvert claimant's entitlement to benefits. On this record, we cannot say the trial court's conclusion was manifestly erroneous.
The trial judge also concluded defendant's refusal to pay benefits was arbitrary, capricious and without probable cause. He found defendant did not make a serious effort to determine whether claimant was entitled to payment despite demand by claimant's attorney and despite the fact that claimant submitted information and documentation which proved that he was entitled to supplemental earnings benefits. Defendant has a duty to investigate and to make reasonable effort to ascertain the worker's exact condition before denying benefits. Holmes v. International Paper Co., supra. Defendant argues that claimant failed to cooperate in the assessment of his claim by not submitting two settlement sheets that were necessary to calculate his earnings. However, the record shows that over forty settlement sheets were involved in this matter. The claimant's failure to submit two settlement sheets, which the trial court found claimant did not have, is not evidence of a lack of cooperation by the claimant. Under these facts, we cannot say the trial court's conclusion that claimant was entitled to attorney fees because defendant's refusal to pay benefits was arbitrary, capricious and without probable cause is manifestly erroneous.
The award of attorney fees must be reasonable based upon the degree of skill and work involved in the case, the number of court appearances, the deposition, the office work and the time spent in court. Frazier v. Conagra, Inc. 552 So.2d 536 (La.App. 2d Cir.1989), writ denied, 559 So.2d 124 (La. 1990). After reviewing these factors, we conclude the attorney fee award of $7,000 is not excessive.

CONCLUSION
For the foregoing reasons, the judgment of the trial court is amended to reflect that claimant's average monthly wage is $1,189.90 and to award past due supplemental earnings benefits in the amount of $654.50 for December 1990, and $613.09 for January 1991. No benefits are due for the months of September 1990, February 1991 and March 1991. In all other respects, the trial court's judgment is affirmed. Costs are assessed to the appellant.
AMENDED AND AFFIRMED.
HIGHTOWER, J., concurs in part and dissents in part, with written reasons.
*267 VICTORY, J., concurs in part and dissents in part for the reasons expressed by HIGHTOWER, J.
HIGHTOWER, Judge, concurring in part and dissenting in part.
In arriving at plaintiff's average weekly wage, the majority properly bases its calculations upon the prevailing compensation for similar work within the industry. It is also correct that, in reference to claiming credit for past excess payments, defendant did not present this issue in the trial court. However, while concurring in these parts of the opinion, I strongly differ in other respects.
Under LSA-R.S. 23:1221(3), entitlement to supplemental earnings benefits in any month hinges upon sub-ninety percent earnings that result from the claimant's physical limitations, rather than other reasons, e.g., a flat economy. The language of the trial court judgment, which the majority affirms, is entirely too broad in this regard. Without any reference to an inability caused by the injury, the decree simply grants such benefits to plaintiff in any month "in which he does not earn ninety percent of his average monthly wage." At a minimum, the judgment should be amended to define the award of future SEB more accurately in accordance with LSA-R.S. 23:1221(3).
Even more glaringly, although changing the calculation of wages and also reducing plaintiff's award by almost 75 percent, the majority continues to assess penalties and $7,000 in attorney's fees against defendant.
Penalties and attorney's fees are precluded when an employer, at the time of reducing or terminating benefits, has sufficient factual and medical information upon which to base that decision. Bradley, supra. Furthermore, the statutory provisions allowing such awards are penal in nature and must be narrowly construed. Lewis v. Alloy Casting of La., Inc., 465 So.2d 847 (La.App. 2d Cir. 1985).
In the instant matter, before the discontinuation of temporary total disability benefits on September 15, 1990, Dr. Irby reported that his patient could return to long-haul driving if he occasionally stopped to rest. Defendant additionally learned that plaintiff had actually signed a contract with another trucking company. In point of fact, in October and November of 1990, plaintiff's earnings exceeded ninety percent of his pre-injury wages. In a December 7, 1990 report, Dr. Jones confirmed Dr. Irby's previous evaluation in that he did not restrict plaintiff from driving.
Thus, defendant had information reasonably controverting Brown's claim, and, indeed, subsequent information chiefly corroborated its decision to terminate payments. Neither did the employer act unreasonably in failing to disburse benefits for the two months in which Brown's wages did not exceed the SEB threshold. By that time, the former employee had actually demonstrated an ability to earn ninety percent of his pre-injury wages, and nothing explained his diminished income. Cf. Hill v. L.J. Earnest, Inc., 568 So.2d 146 (La.App. 2d Cir.1990), writ denied, 571 So.2d 652 (La.1990).
Furthermore, in opining that appellant acted arbitrarily and capriciously, the lower court predicated its determination upon an erroneous calculation of the SEB threshold. Although the trial judge concluded Brown should have received benefits during five of the months in dispute, the majority, agreeing with the employer's position in this regard, has now correctly limited past benefits to two months.
Under such circumstances, the imposition of penalties and attorney's fees cannot be justified. And, certainly, where a court substantially alters the benefits award, a $7,000 attorney's fee should not be left unmodified. Cf. Frazier v. Conagra, Inc., 552 So.2d 536 (La.App. 2d Cir.1989), writ denied, 559 So.2d 124 (La.1990) (awarding fees of only $4,000 in a case presenting more complicated issues).
Accordingly, from these aspects of the opinion, I respectfully dissent.