| t GASKINS, J.
The plaintiff, Thurmond L. Campbell, Jr., appeals a trial court judgment rejecting his claims for personal injury and damages allegedly resulting from a wheelchair accident. For the following reasons, we affirm the trial court judgment.
FACTS
The plaintiff is a quadriplegic due to a gunshot wound in 1988. In 1995, he was attending classes at Louisiana State University in Shreveport (LSUS). On December 10, 1995, he called a Lift Line van which was owned by the City of Shreveport, operated by Yellow Cab Company of Shreveport, and driven by Dennis Davenport. The plaintiff was planning to go to LSUS for final exams. According to the plaintiff, while attempting to load the plaintiffs motorized wheelchair onto the lift, the driver acted negligently, causing the plaintiff and his chair to fall off the lift. He claimed that he was injured as a result.
On December 9, 1996, the plaintiff filed suit against the City of Shreveport, Yellow Cab, Mr. Davenport, and their insurer, Pinnacle Insurance Company. The plaintiff alleged that Mr. Davenport operated the lift in such a manner as to cause the plaintiff to fall off the lift, travel across the parking lot, hit an embankment, and be thrown out of the chair. He claimed that he was initially knocked unconscious and thereafter continued to suffer periods of unconsciousness. In an answer to the petition, the City of Shreveport and Yellow Cab claimed spoliation of the evidence, contending that the plaintiff disposed of the wheelchair in question before their expert could examine it.
| ¡>The plaintiff entered into a written stipulation that the case had a judgment value of less than $50,000.00. Therefore, the case was removed from the civil jury docket and a bench trial was held on September 21, 2000. On October 23, 2000, the trial court filed a judgment dismissing the plaintiffs demands against the defendants, with prejudice, at the plaintiffs cost. The trial court assigned the following written findings of fact and reasons for judgment:
1. [T]he accident occurred on December 10, 1995 in the parking lot of plaintiffs apartment complex in Shreveport, Louisiana;
2. [T]he plaintiff is an incomplete quadriplegic secondary to a gunshot wound in 1988. On the date of the accident, he was attempting to maneuver his motorized wheelchair onto a ramp which was to lift him into a van;
3. [T]he van, owned by the City of Shreveport and leased to Yellow Cab Company of Shreveport, Inc., was being driven that day by Dennis Davenport;
4. [T]he plaintiffs wheelchair is controlled by a “joy stick” which governs direction and speed. As the plaintiff was attempting to drive his wheelchair onto the ramp, he accidently struck either the tray over his lap, which jammed the joy stick, or struck the joy stick itself. Once the joy stick was jammed, the wheelchair moved off the ramp and traveled some distance before either the plaintiff was able to stop it, or it came to rest against the curb of the parking lot;
5. [T]he plaintiff claims he was injured as a result of this incident, and reported *1223 to the Emergency Department of Schumpert Medical Center two days later. He was examined, and because of complications in connection with his physical disability, he was admitted to the hospital for observations.
Based on these written findings of fact and the record presented, the trial court concluded there was insufficient credible evidence to establish that Mr. Davenport caused or contributed to the events leading up to the incident in which Mr. Campbell contends he was injured. The trial court |3also found no credible evidence to establish that any of the defendants breached any duty to Mr. Campbell that may have caused or contributed to the incident.
The plaintiff appealed the trial court judgment, urging several assignments of error. Essentially the plaintiff argued that the trial court erred in failing to find his version of the incident to be credible. He also argues that the trial court erred in not allowing a civil jury trial in this case and contends that due process was violated in that the driver of the van, Mr. Davenport, did not testify at trial.
MANIFEST ERROR AND CREDIBILITY
The majority of the plaintiffs assignments of error attack the trial court’s finding that the plaintiffs version of the incident was not credible. The plaintiff argues that the trial court erred in finding that he did not have control of the wheelchair, erred in finding that the plaintiff was attempting to drive the wheelchair onto the lift, erred in its conclusions based upon the medical records, and erred in its credibility determinations. These arguments are without merit.
A court of appeal may not set aside a trial court’s finding of fact in the absence of “manifest error” or unless it is “clearly wrong”; where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inference of fact should not be disturbed even though an appellate court may feel that its own evaluations and inferences are as reasonable. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). When factual findings are based on determinations regarding the credibility of witnesses, the |4manifest error-clearly wrong standard demands great deference to the trier of fact’s findings because only the fact finder can be aware of the variations and demeanor and tone of voice that bear so heavily on the listener’s understanding and belief in what is said. Rosell v. ESCO, 549 So.2d 840 (La.1989). In applying the manifestly erroneous-clearly wrong standard, appellate courts must keep in mind that their initial review function is not to decide factual issues de novo, and where there are two permissible views of the evidence, the fact finder’s choice between them cannot be manifestly erroneous or clearly wrong. Rosell v. ESCO, supra; Poret v. Bedsole Timber Contractor, Inc., 32,971 (La.App.2d Cir.4/5/00), 756 So.2d 664.
The only two witnesses who testified at trial were the plaintiff and his personal care assistant, Elizabeth Spates. The plaintiff testified that he was injured when Mr. Davenport was negligent in maneuvering the plaintiffs wheelchair onto the wheelchair lift. However, there is some dispute as to whether Mr. Davenport operated the chair, or whether the plaintiff was attempting to position the wheelchair on the lift.
According to the plaintiff, the van was supposed to arrive at 8:45 a.m., but instead came at 8:20 a.m. The plaintiff claimed that Mr. Davenport left without him and the plaintiff had to call the dispatcher to get the van to return. The plaintiff said that he usually backed his wheelchair onto the chair lift and was then lifted up onto *1224 the van. He would then turn the chair into position to be secured in the van.
The plaintiff claimed that he had a cast on his right arm up to the elbow. Because he was running late and it was difficult to operate the |,joystick with the cast on his arm, the plaintiff said that Mr. Davenport was attempting to position the chair onto the lift. The plaintiff testified that a guard rail on the lift hit his lap tray, knocking the joystick into gear and projecting the chair forward. He claimed that the chair went out of control and traveled through the parking lot. It hit a small concrete embankment or curb. According to the plaintiff, the wheelchair was doing top speed, 10-13 m.p.h. He claimed that the concrete curb was cracked by the impact. The plaintiff stated that he did not fall out of the chair. He testified that the only time any of his books fell off the lap tray was when he hit the curb. Mr. Davenport and a neighbor got the chair off the curb. The plaintiff stated that his body was twitching and experiencing spasms. He also claimed that he lost consciousness. At one point, the plaintiff testified that he may have lost consciousness for 20 minutes. He said that he went in and out of consciousness. At trial, the plaintiff was questioned about his deposition testimony that he did not lose consciousness again before going to the hospital.
The plaintiff was able to drive the wheelchair back to his apartment. He claimed that later that day, he went to Schumpert Medical Center. He was admitted and was treated for a heart problem. According to the plaintiff, he was also given pain medication and continues to suffer from back pain.
According to the defendants, the hospital records show that the plaintiff did not go to the hospital until two days after the incident. The defendants also questioned the plaintiff about hospital records which showed 1 fithat he was not in an arm cast at the time of the incident complained of here.[1] The plaintiff stated that he did not remember telling a doctor at Schumpert that he fell out of the wheelchair. He also disputed records from Louisiana State University Medical Center showing that he had fallen out of the wheelchair five times on various occasions. The plaintiff further denied telling the doctor that he accidently put the chair in gear himself, resulting in the accident.
The plaintiff was questioned about an incident in August 1995, where his arm was broken in a wheelchair accident very similar to the version of events related by the plaintiff in this case. The plaintiff also testified that he was taking pain medication before December 1995.
The plaintiff was also asked about how the lap tray on his wheelchair worked and whether it played a role in engaging the joystick in the accident. The plaintiff disposed of the wheelchair involved in the incident before the defendants had an opportunity to examine it.
Ms. Spates, the plaintiffs personal care assistant, testified at trial. She stated that before this incident, the plaintiff had blackouts, dizziness and faintness. He also had muscle spasms and back pain prior to this *1225 accident. Ms. Spates said that the plaintiff had fallen out of his wheelchair on occasion before this incident and he had several wheelchair-related accidents.
^According to Ms. Spates, on the morning of December 10, 1995, the plaintiff was preparing to leave his apartment on the Lift Line van when he asked her to go back and get a book for him. She said she went into his room, got the book, and was heading outside when she saw the plaintiff driving the wheelchair back to the apartment. Ms. Spates stated that this happened in a very short time. She testified that the plaintiff was not outside for twenty minutes. Ms. Spates did not remember the van arriving early, leaving, and then coming back.
The plaintiff told Ms. Spates that his wheelchair had flown through the air and that he was hurt. She could not tell whether he was hurt or not. She stated that he appeared to be “his normal self.” Ms. Spates did not remember the plaintiff saying that he lost consciousness as a result of the incident. The plaintiff told Ms. Spates that she could leave because he was going to the doctor. She did not know if the plaintiff went to the hospital that day. She testified that she talked to him in the hospital over the next few days. Ms. Spates said that she was present when the plaintiff called the Lift Line dispatcher after this incident and they “were having a lot of words.”
There are numerous disputed points in the plaintiffs verison of this incident. It is disputed whether he had a cast on his arm, whether he lost consciousness, whether he fell out of the chair, and whether he or Mr. Davenport was maneuvering the wheelchair onto the lift. How long the plaintiff was outside and whether the plaintiff went to the hospital on the day of the incident also are in question.
[sThe plaintiff frequently claimed to have wheelchair accidents and the circumstances of this incident closely parallel those of another accident in August 1995. The plaintiff was already on pain medications and has not shown any new injuries arising from this incident. Further, the plaintiff disposed of the wheelchair involved before the defendants could examine it.
The testimony of Ms. Spates does not support the version of events related by the plaintiff. We also note that the plaintiff had a conviction for manslaughter and testified that he served six years and eight months of a 20 year sentence.
Given all these factors, we find that the trial court was not manifestly erroneous or clearly wrong in failing to accept the plaintiffs testimony regarding the incident. The court’s ruling dismissing the plaintiffs claims is correct.
CIVIL JURY TRIAL
The plaintiff contends that the trial court erred in holding a bench trial in this case rather than conducting a civil jury trial. This argument is without merit.
Unlike the criminal context, there is no United States or Louisiana constitutional right to trial by jury in a civil case in Louisiana courts. The right to jury trials in civil cases is not so fundamental to the American system of justice as to be required of state courts by the Due Process Clause of the Fourteenth Amendment. Riddle v. Bickford, 2000-2408 (La.5/15/01), 785 So.2d 795. In Louisiana courts, the right to a jury trial in a civil case is provided for by statute, namely La. C.C.P. arts. 1731 through 1814. La. |3C.C.P. art. 1731(A) provides that, except as limited by article 1732, the right of trial by jury is recognized. Riddle v. Bickford, supra. La. C.C.P. art. 1732 provides, in pertinent part:
A trial by jury shall not be available in:
*1226 (1) A suit where the amount of no individual petitioner’s cause of action exceeds fifty thousand dollars exclusive of interest and costs.
The record clearly shows that the defendant, represented by counsel, entered into a pre-trial stipulation that the case has a judgment value of less than $50,000.00 and the case should be removed from the civil jury docket and should be set for a bench trial. The plaintiff has not shown that this stipulation was reached over his. objection or entered into without his knowledge. Therefore, because ■ he clearly agreed to proceed with a bench trial rather than a jury trial, he cannot now complain of the mode of trial.
DUE PROCESS
The plaintiff argues that the trial court violated principles of due process in that Mr. Davenport, the driver of the van, did not testify at trial. The defendant argues that due process requires that one must be confronted by his accusers. This argument is without merit.
Mr. Davenport did not testify at trial because he could not be found. The record shows that the defendants diligently tried to find Mr. Davenport to subpoena him to appear and testify. In August 2000, the defendants sought a continuance, arguing that they had hired a private investigator to find Mr. Davenport. He was deemed to be “the primary defense witness.” At the end of the trial, the parties agreed to hold the record open for a limited 110period to allow the defendants additional time to locate and depose Mr. Davenport.
This is a civil matter, not a criminal case. Mr. Campbell, as the plaintiff, had the burden of proof. Mr. Davenport was not an “accuser.” Further, there is nothing to indicate that Mr. Davenport’s testimony would have been favorable to the plaintiff. The plaintiff has neither demonstrated that Mr. Davenport’s failure to testify was prejudicial nor that he was deprived of due process by Mr. Davenport’s absence. We reject the plaintiffs claim on this issue.
CONCLUSION
For the reasons stated above, we affirm the trial court judgment rejecting the claims of the plaintiff, Thurmond L. Campbell, Jr. Costs are assessed to the plaintiff.
AFFIRMED.

. The plaintiff's medical records for periods before and after the incident were admitted into evidence at trial and were considered by the trial court in reaching its decision. Those records were apparently misplaced and are not included in the appellate record. A statement from the Clerk of Court of the First Judicial District Court showed that the records could not be located after a diligent search. The attorneys in this matter also denied having the records in their possession. The medical records do not appear to support the plaintiff's position. The record before us is adequate to review the trial court decision and therefore remand is unnecessary.