11 STEWART, J.
Catherine Sparks (“Sparks”) appeals the judgment of the trial court declining to increase an award of workers’ compensation benefits and attorney fees or grant vocational rehabilitation benefits. For the reasons herein, we affirm.
*331 FACTS
Sparks began working for Engineering Products (“Engineering”) on November 10, 1986, as a machine operator. The job involved trimming parts and putting them into a box, then moving the box once it became full. On December 5, 1988, Sparks was struck on the head, shoulder, back, and neck by a heavy metal hopper which fell from a machine in her work area.
Sparks was initially seen in the emergency room of Bossier Medical Center on the date of the accident, and was thereafter treated by several doctors and physical therapists. Nine months later, she was released to light duty work. Sparks was in continual pain after she returned to work. On October 4, 1989, she was examined by Dr. Goodman who recommended that she continue light work, but indicated that he had no further treatment for her.
Defendant, Insurance Company of North America (“INCA”), initially paid weekly Temporary Total Disability (“TTD”) benefits at a rate of $146.66 until December 26, 1989, when they were terminated on the basis of Dr. Goodman’s release of Sparks to light duty work despite the fact that Sparks was not earning 90% of her pre-injury wage. No Supplementals Earnings Benefits (“SEBs”) were paid at any time.
| ¡Apparently, Sparks aggravated her injuries or felt some discomfort while lifting objects at work on October 4, 1989. When Sparks testified about this incident at trial, the defense objected to an improper expansion of the pleadings. The objection was sustained by the trial court and has not been appealed. Consequently, the issue of any separate injury is not before this court. On October 6, 1989, Sparks was examined by Dr. Susan Williams of the Arthritis and Rheumatology Clinic who determined that Sparks had sustained a cervical strain or myofacial strain and was disabled from work. As a result of Dr. Williams diagnosis, a demand letter was sent to Engineering’s insurance company for reinstatement of benefits. Benefits were never reinstated. Dr. Williams suspected Sparks was suffering from fibro-myalgia. Sparks then began physical therapy; but because the insurance company refused to pay, she was forced to stop undergoing treatment.
Engineering stipulated that a work related accident occurred on December 5, 1988, and that Sparks was injured as a result of that accident. Engineering further stipulated that they miscalculated the amount of benefits due Sparks. The trial court ruled for Sparks insofar as the discrepancy in the amount of TTD benefits that have been paid and what should have been paid based on an accurate weekly wage. Penalties and attorneys fees of $7,500 were also awarded as a result of the miscalculation. The trial court also awarded SEBs for four weeks of work performed by Sparks at 76% of her pre-acci-dent wage together with legal interest and court costs. However, the court declined to award wage benefits subsequent |3to October 6, 1989, mooting vocational rehabilitation or penalties for failure to pay such.
DISCUSSION

Standard of Review

A court of appeal must not set aside a trial court’s finding of fact in the absence of manifest error or unless it is clearly wrong; and where there is a conflict in testimony, reasonable inferences of fact should not be disturbed even though an appellate court may feel that its own evaluations and inferences are as reasonable. Campbell v. Davenport, 35,128 (La.App.2d Cir.11/02/01), 799 So.2d 1220 citing *332 Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
The defendant stipulated at trial that it miscalculated benefits and consequently owed attorney’s fees and penalties. This necessarily presupposed that Sparks was injured as a result of an accident in the course and scope of her employment on December 5,1988. An injured worker’s disability is presumed to have resulted from an accident, if before the accident he was in good health, but commencing with the accident the symptoms of the disabling condition appear and continually manifest themselves afterwards, providing either that there is sufficient medical evidence to show a causal connection between the accident and the disabling condition, or that the nature of the accident, when combined with the other facts of the case, raises a natural inference through human experience of such a causal connection (emphasis added). Burroughs v. LCR-M, 34,082 (La App.2d. Cir. 3/2/01), 781 So.2d 877. The issue of Lgreatest contention was whether Sparks’ condition beyond October 6, 1989, was related to the December 1988 accident. The trial court found that Sparks’ symptoms were not related to the 1988 injury.
Based on our review of the record, we cannot find that the trial court was incorrect by ruling that Sparks was not entitled to any indemnity benefits after October 6, 1989. Since her initial injury on December 5, 1988, Sparks has been seen by no less than six doctors. Sparks was initially treated at Bossier Medical Center. Next, she saw her personal physician, Dr. William Bailey, several times after the December accident, but she could not remember telling him about any physical problems related to that accident. She then saw Dr. Edwards, Dr. Long, Dr. Mead, and Dr. Grosinger—none of whom could find a reason for her continued complaints of physical problems. In fact, Dr. Goodman released Sparks to work with limitations on her lifting because of her physical stature rather than an orthopedic condition.
The only physician who gave any explanation for Sparks continued complaints was Dr. Williams, a rheumatologist, who diagnosed Sparks with fibromyalgia in 1989. However, Dr. Williams stated in her deposition that she could not conclusively say that the December incident precipitated Sparks’ condition. In fact, she indicated that it was difficult to point to any precipitating event as the cause for the fibromyalgia she diagnosed. Dr. Williams noted that stress is often a factor that can cause fibromyalgia. Dr. Williams testified that Sparks admitted to being under stress because of the breakdown of her marriage during this time. Furthermore, Dr. Williams | ¡¡stated that it was not until August of 1994 that she could identify enough “tender points” to support a diagnosis of fibromyalgia. Although none of the doctors could dispute Dr. Williams’ diagnosis of fibromyalgia, Dr. Williams could not link her diagnosis to the work accident.
The court determined that Sparks did not meet her burden of proof of showing a causal connection between the accident and her present injury. The court determined that she was a malingerer who engaged in doctor shopping and when she was told by a treating physician that nothing wrong could be found, she went to another doctor. We find no manifest error in the court’s conclusion.

Additional and/or Future Medical Expenses

Sparks also contends that the trial court erred by failing to award additional medical expenses or future medical expenses, mileage, prescription benefits, and attorney fees for the arbitrary and capri *333 cious failure to pay said benefits. Because we find no manifest error in the trial court’s denial of indemnity benefits beyond October 6, 1989, it is axiomatic that we also find no error in the denial of medical benefits and attorney fees related to the recovery of such. Although certain medical expenses, prescription, and mileage expenses incurred after October 3, 1989 were paid, the court did not find that this was an admission of liability by the defendant. There was no arbitrary and capricious denial of relief. Therefore, this assignment is without merit.

Vocational Rehabilitation

Additionally, Sparks asserts that the trial court erred when it did not order the defendant to provide vocational rehabilitation. The trial court | ^apparently agreed with Dr. Goodman’s conclusion that any limitation on Sparks future employment is related to her small stature rather than any physical limitations associated with the December 5, 1988, accident. This credibility determination was well within the province of the court. Thus, this assignment is without merit.

Attorney Fees

A judge’s decision regarding the imposition of attorney fees is a factual determination accorded much discretion and that determination will not be reversed absent manifest error. Brown v. Vernon Sawyer, Inc. 25,959 (La.App.2d Cir.10/26/94), 645 So.2d 260.
The defense asserts that the fees awarded were excessive and should be reduced to $2,500. Sparks asserts that the fees and expenses required to bring this matter to trial totaled $17,386.46. Contrary to Sparks’ claims, the greatest issue of contention in this case concerned the continuation of benefits and expenses for Sparks after October 6, 1989, instead of the defense’s miscalculation of benefits and failure to pay SEBs.
However, we find no manifest error in the trial court’s award of attorney’s fees. The trial court acknowledged that the $7,500 award, given to compensate Sparks for the miscalculation, did not equal the amount of hours billed by the plaintiff, but that the award was reasonable under the circumstances of the case. This assignment is without merit.
CONCLUSION
Based on the foregoing, the judgment of the trial court is affirmed.
The costs of this appeal are divided equally between the parties.
AFFIRMED.